MINA DAIKER and GEORGE DAIKER, her Husband, Respondents, v. MARIE A. STRELINGER, Sometimes Known as MARIE A. CURTIS, and MAURICE B. STRELINGER, Sometimes Known as MAURICE B. CURTIS, Appellants.

*Fraudulent representations as to the value of foreign real estate made by owners who alone have knowledge on the subject — they justify the rescission of an exchange — inquiries, made before closing the purchase, which did not influence the vendees — tender where the vendees cannot be restored to their original position — damages as the only remedy — deposit in court of a deed of reconveyance to the vendors.*

Where knowledge in relation to the condition and value of foreign real estate, proposed to be exchanged for other real property, is confined entirely to its owners, representations as to its value made by them to vendees are not mere non-actionable expressions of opinion, but constitute statements of fact, which, when shown to be false, entitle the defrauded vendees to maintain an action for rescission and for the cancellation of their own deed.

The fact that the parties to whom the representations were made did not close the transaction without making inquiries by telegram in reference to the property, does not, of itself, prove that such parties were not influenced by such representations, especially where the opinion so obtained by telegram is of such a character that had they relied thereon they probably would not have made the exchange.

Where it is proved in an action to set aside the exchange induced by such false representations that the defendants, since acquiring title to the plaintiffs' property, have mortgaged it to its full value, and, before judgment was signed in the action, have conveyed it to a third person, thus making it impossible to restore the plaintiffs to their original position, a tender upon the trial of a reconveyance of the property conveyed to the plaintiffs is sufficient without a tender of rent received, the question of rent and interest being one to be adjusted by the court.

In such a case, the only judgment that can be entered is one for damages, which should, however, contain a provision requiring the plaintiffs to deposit with the clerk of the court, for the use of the defendants, the deed so tendered upon the trial of the action.

APPEAL by the defendants, Marie A. Strelinger, sometimes known as Marie A. Curtis, and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 27th day of January, 1897, upon the decision of the court rendered after a trial at the New York Special Term.

*Benjamin N. Cardozo*, for the appellants.

*William E. Wyatt*, for the respondents.

McLAUGHLIN, J.:

This action was brought to set aside a contract for the exchange of certain real estate and a deed executed and delivered in pursuance thereof, upon the ground that they were procured and induced by the false and fraudulent representations made by the defendants. The plaintiffs by their complaint charged that, in August, 1895, they were the owners and in possession of certain real estate situate in the city of New York of the value of $25,000, subject to a mortgage then thereon of $12,000; that the defendants, for the purpose of inducing the plaintiffs to exchange this real estate for certain real estate owned and possessed by them in the State of California, consisting of a ranch of 320 acres and 6 lots in Paralta Park, falsely and fraudulently represented that the ranch was worth the sum of

$36,000, over and above the mortgage thereon, and the lots in Paralta Park were worth $6,500 over and above all mortgages thereon; that the rent received from the ranch was $3,000 in 1894 and $2,700 in 1895; that the park was covered with good and substantial structures and residences and had a hotel thereon; that the plaintiffs, relying upon these statements so made by the defendants and believing the same to be true, entered into a contract; and in pursuance thereof did convey the real estate owned by them to the defendants, and received in exchange and as a consideration therefor a deed of conveyance of said ranch and lots; that such statements were wholly false and untrue to the knowledge of the defendants, and were made by them for the purpose of inducing the plaintiffs to make the exchange; that the ranch was not worth more than $7,000, which was less than the mortgage then thereon; that the rent received from it during the years 1894 and 1895 was only $300; that the lots in Paralta Park were not worth more than $250, and that the park was not built up with substantial buildings; on the contrary, there was only one small building thereon which was not used as a hotel or in any way occupied.

The defendants by their answer denied substantially all the material allegations of the complaint except the making of the contract and the execution and delivering of the deeds of conveyance in pursuance thereof.

Upon the trial the testimony offered on the part of the plaintiffs tended to show that on the 18th day of August, 1895, they were the owners, subject to a mortgage of $12,000, of a certain house and lot in the city of New York, which was of the value of at least $25,000; that they were induced by defendants to enter into a contract to exchange, and thereafter did by deed of conveyance exchange, this lot for certain lands in California owned by defendants, consisting of a ranch of some 320 acres and certain lots in Paralta Park, so called; that at the time of the exchange the plaintiffs had no knowledge of the California lands or their value, which fact was known to the defendants; that the defendants stated and represented that the value of the ranch, over and above the mortgage thereon, was at least $36,000, and that it would bring $35,000 at auction, but was really worth $50,000; that they received $3,000 rent for it in 1895; that this was a low rent, but that it was occupied by a former serv-

ant who paid them a share of the produce; that only one-third of
it was under cultivation, and this one-third brought in the rent
which they received; that the lots in Paralta Park were worth, in
the aggregate, $6,500; that the park was covered with good sub-
stantial buildings; that it was "nearly all built up with private resi-
dences;" that they produced a map of the park and pointed out
where there was a hotel "worth a couple of hundred thousand dol-
lars;" that the reason why the defendants were willing to make such
a liberal exchange, was because they had no one to whom could be
intrusted the collection of the rents, and that one of the defendants
could not return to California because he had killed a man there;
that they were responsible people, worth a large amount of money,
and if there was any trouble over the transaction they would make
everything all right; that two names were given to the plaintiffs to
whom they could telegraph in California, as to the value of this
property. One, the bank which held the mortgage on the ranch,
and the other a man by the name of Meyers; that telegrams were
sent to each of them, and the bank answered: "Surveyors estimate
Curtis ranch nineteen thousand; mortgage nine thousand; interest
due, five hundred and twenty; delinquent taxes, one hundred fifty,"
and the answer from Meyers was "$300;" that the defendants
explained the low estimate of value stated in the telegrams by stating
that, in California, valuation was fixed according to what would be
loaned on the property, which was one-fourth of its value; that the
defendants insisted that the transaction should be closed at once if
closed at all; that a contract was thereupon made and deeds of convey-
ance shortly thereafter executed and delivered in pursuance thereof;
that, within a few days after the delivery of the deeds, the plaintiffs
went to California, looked over the ranch and inspected the lots in
the park; that they then, for the first time, ascertained that the
ranch was not worth the amount of the mortgage then thereon;
that the only income from it in 1894 and 1895 was from grain,
which amounted to $226.36 in 1894, and $217.13 in 1895; that
they went to the park and found that only one street had been cut
through; that the only building was a cheap frame building unoc-
cupied; that the full value of the ranch was not more than $7,000
and the lots in the park not to exceed $200 apiece.

The testimony of the plaintiffs was contradicted by the defend-

ants as to the statements and representations made by them concerning the value of the California property, and also in some other respects. But the trial court found the facts substantially as claimed by the plaintiffs, and awarded them a judgment of $9,000. From this judgment the defendants have appealed.

After a careful consideration of the record before us, we are unable to see how the trial court could have reached any other or different conclusion than it did. The evidence offered upon the trial tended to establish a clear cause of action for fraud and deceit. The plaintiffs had no knowledge of the value of the California property, and were compelled to and did rely on what the defendants said in respect thereto. Their statements were false, and were made for the purpose of cheating and defrauding the plaintiffs.

It is, however, urged by the defendants' counsel that the statements made by the defendants, as to the value of the property, must be treated as the expression of opinion, and that even though they were false, and known to be false, they do not furnish a basis for a rescission of the contract; that there must be something more than an expression of opinion as to value to entitle one to a rescission. It is undoubtedly true that a mere statement as to the value of property in negotiations for a sale, standing alone, where the subject of the representations is equally open to both parties for examination, furnishes no ground for relief; but here the defendants not only had superior, but the only knowledge on the subject, and, therefore, the statements were something more than expressions of opinion, they were statements of facts, and if such statements were false, and made with the intent to defraud, and did defraud, then they vitiated the transaction and subjected the defendants to damages. ( *White* v. *Loudon,* 90 Hun, 218.) And in addition to the statements as to the value of the property, there were other gross misstatements of facts, prominent among which were those as to the rents received. It is also urged that the plaintiffs did not entirely rely upon the statements of the defendants, and, therefore, they were not deceived by and did not sustain any damages in consequence of them. The mere fact that the plaintiffs would not close the transaction without sending the telegrams referred to, does not, of itself, prove that they were not influenced by the statements of the defendants. On the contrary, the information derived from these telegrams, taken in con-

nection with the other evidence, would seem to establish clearly and conclusively that the plaintiffs did rely entirely upon the defendants' statements. According to the telegrams, the equity in the ranch was less than $10,000, and in the lots about $1,800. This was from $1,000 to $2,000 less than the equity of the plaintiffs in their property. It is, therefore, improbable that, if the plaintiffs believed the information contained in these telegrams, and relied upon it, they would have made the exchange.

The appellants' counsel also insists that the judgment must be reversed because a sufficient tender and offer to return by the plaintiffs was not established upon the trial. The complaint, it will be observed, offered to restore to the defendants the California lands, and the record shows that they actually did tender a deed of the same upon the trial. This was all they were called upon to do, because the question of rent or interest was in the hands of the court to adjust in such a manner as it saw fit and as the equity of the case required. It was not necessary, therefore, that the $137 referred to should have been returned or tendered. The judgment rendered makes the proper restitution. (*Allerton* v. *Allerton*, 50 N. Y. 670.) Only $9,000 were awarded to the plaintiffs to compensate them for the damages which they had sustained, and there is abundant evidence to show that their loss was nearly or quite $12,000. A judgment for damages was proper. Indeed, it was the only relief that the court could grant. Since it appeared that the defendants, after they acquired title to the plaintiffs' property, placed thereon three mortgages, aggregating $16,000, which entirely exhausted any equity therein and made it impossible to restore plaintiffs to their original position. And it also appears from the record that, after the trial and before the judgment was signed, the property was actually sold to a third person under foreclosure of the first mortgage.

A further suggestion by appellants' counsel alone remains to be considered. He insists that " the statement in the decision of the court below, that the plaintiffs, through no fault of theirs, are unable to return the California property, is wholly unsupported by the evidence," and in this he is correct. There is no evidence to sustain such finding. But the appellants are not injured by it, and

are not in a position to complain by reason of it. It will be remembered that the plaintiffs actually tendered a deed, and no evidence whatever was offered to the effect that they did not have the title. The tender, therefore, was apparently good. When it was made, defendants' counsel remarked, "It is necessary to show title; that they have not as a matter of fact." This remark of counsel was not evidence, and could not be considered as such by the learned trial justice, but he inadvertently seems to have accepted it as evidence and found accordingly. This he had no right to do, but, as already stated, the defendants were not injured by it because the plaintiffs' tender was *prima facie* good, and was so considered at the time. The defendants did not attack or challenge it in any way. They did not move to dismiss the complaint upon that ground; on the contrary, when the plaintiff rested and the defendants' counsel made the remark above quoted, he then added, " Now, notwithstanding that tender, I move to dismiss" on other grounds specified by him. The motion made at that time to dismiss was renewed at the close of the whole case, and the only additional ground then stated was that the plaintiffs had failed to pay certain interest and taxes on the ranch, but there was no intimation that any infirmity of title had resulted by reason thereof. The facts proved justified the relief granted, and for that reason the judgment ought not to be disturbed because of the erroneous finding.

After careful consideration of all the facts before us, we think the judgment was right. It is, however, proper that it should be modified to the extent of requiring the respondents to deposit with the clerk of the court, to and for the use of the appellants, the deed which was tendered by the plaintiffs to the defendants upon the trial of the action; and as thus modified the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, RUMSEY and PATTERSON, JJ., concurred.

Judgment modified as directed in opinion, and as modified affirmed, with costs.