### JACKSON v. FOLEY et ux.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. PLEADING—COMPLAINT—AMENDMENT—INSTANTER.

    Under Code Civ. Proc. § 723, providing that the court may allow amendments on the trial, or at any time before judgment, on such terms as he may deem just, where a complaint to rescind a contract of sale contained only general allegations as to the false representations of defendant, and he made no application for a postponement of the case, it was proper to allow plaintiff to amend instanter by setting out the false representations in detail.

2. SAME—VALUE OF PROPERTY—FALSE REPRESENTATIONS—CAVEAT EMPTOR.

    Where defendant, who was an experienced manufacturer of gold pens, in a sale of his manufacturing business to plaintiff made false representations as to his daily sales, the value of the stock, the merits of the manufacturing machinery, and the yearly profits, with intent to deceive plaintiff, who was ignorant of the business, plaintiff was entitled to rescind the contract and recover the purchase money paid, since the parties did not stand on an equal footing, and the rule of caveat emptor did not apply.

3. SAME—CONTRACT—RESCISSION—LACHES.

    Where defendant, in a sale of his business to plaintiff in August, 1898, made false representations, and afterwards wrote encouraging letters to plaintiff that trade would soon be better, whereby plaintiff did not bring an action to rescind the sale until January, 1899, such delay was excusable, and did not bar plaintiff's right to rescind.

4. SAME—INCOMPETENCY OF PURCHASER—RESCISSION.

    Where plaintiff brought suit to set aside a sale for fraudulent representations of defendant as to the condition of the business at the time the sale was made, the fact that plaintiff was incompetent to successfully manage the business constituted no defense to the action.

5. SAME—PERSONAL JUDGMENT—LIABILITY.

    Where plaintiff sued defendant and wife to set aside a sale for the fraudulent representations of defendant, and to annul a mortgage to the wife for a balance of the purchase money, and to recover a cash payment, no part of which was received by her, it was error to enter a personal judgment against her for the cash payment.

    Van Brunt, P. J., and O'Brien, J., dissenting.

Appeal from special term, New York county.

Action by Joseph R. Jackson, Jr., against John Foley and another. From a judgment in favor of plaintiff, defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Samuel Greenbaum, for appellants.
Herbert L. May, for respondent.

RUMSEY, J. On the 15th of August, 1898, the defendant John Foley sold to the plaintiff his gold pen manufacturing business, with all the rights, privileges, and good will appertaining thereto, including

the trade-mark, and all the stock of goods, materials, machinery, showcases, and fixtures of every kind appertaining to the business. The consideration for the sale was $4,000 paid in cash, and an agreement to pay $11,000 out of the profits of the business at specified times. The interest on the $11,000 was to be paid quarterly, irrespective of the fact whether there were profits or not. This deferred payment was secured by a mortgage upon the property sold, given by the plaintiff to the defendant Elma Foley. The plaintiff took possession under his contract on the 24th of August, 1898. He continued in possession until the latter part of January, 1899, when he rescinded the contract, tendered back to Foley all he had received, and demanded that the mortgage be canceled, and that Foley should pay back to him the $4,000 he had paid. This demand being refused, the plaintiff brought this action, offering to deliver up all that he had received under the contract, and asking judgment that the mortgage to Elma Foley be canceled and discharged, that the contract be annulled, and that the defendants be compelled to pay back the money paid on the purchase price. The ground upon which this relief is sought is that the plaintiff was induced to make the purchase by false and fraudulent statements as to the quantity and value and nature of the stock and machinery that was transferred, and other false representations, which were made by Foley to the plaintiff and his agent with the purpose of misleading him and inducing him to enter into the contract. The learned justice at the special term found that the representations were made substantially as stated by the plaintiff; that they were false, and made with intent to deceive; and he directed judgment to be entered, canceling the mortgage, and requiring the defendants to pay back the money which had been received from the plaintiff. From this judgment this appeal is taken.

The complaint, as originally served, contained very general allegations as to the false representations, and upon the trial, when it was attempted to prove them, it was objected that they had not been properly pleaded. Application was then made to amend the complaint, which, although opposed by the defendants, was granted, and the pleadings were thereupon amended by setting out the representations which the plaintiff claimed had been made, and their falsity. It is objected that this ruling of the court was erroneous. This was clearly one of the amendments authorized by section 723 of the Code of Civil Procedure, and its granting is very largely in the discretion of the court to whom the application is made; and, unless it appears that injustice was done by allowing the amendment, the act should not be reversed in the appellate court. We cannot see that any injustice was done to the defendants by permitting this amendment to be made, although it was stated, when it was suggested that such an application would be made, that the defendants could not meet the evidence. But it is quite apparent from an examination of the record that the defendants were able to introduce testimony bearing upon every fact set up in the amended complaint, and they made no application for a postponement, as they should have done had they been surprised by the amendment, so as to be unable to meet

the plaintiff's case. There is no reason, therefore, why the judgment should be overthrown because of that amendment.

Upon the question of fact presented, there was a serious conflict of testimony; but, the learned justice at the special term having seen the witnesses and observed their manner of giving testimony, we do not feel at liberty to say that his conclusions were not correct, especially as there was ample evidence to sustain them; and in the further consideration of this case we shall assume that the allegations of the plaintiff as to the representations and their falsity were established, and confine ourselves to a consideration of the legal question presented. It appears from the testimony that the negotiations leading up to the contract were had between the plaintiff and his father on the one hand, and the defendant John Foley and his wife, Elma, on the other; Mrs. Foley being present, but taking no important part in the negotiations. Their attention was called to the fact that the property was for sale by an advertisement which is found in the case, and which stated that the business was of "great merit, the articles patented, long established, the average profits over $15,000," and describes the property to be sold as consisting of a valuable business, with stock, fixtures, factory, handsome Broadway establishment complete, with use of the owner's name. Upon seeing this advertisement, the father of the plaintiff went to Foley, and made inquiries with respect to the property to be sold. His testimony is that both he and his son, the plaintiff, were absolutely ignorant of the nature and value of the business or property, and relied solely upon what Foley told to him. Foley said he wanted to sell his gold-pen business and everything appertaining to it; that the business was very valuable; that he had made $15,000 a year on the average; that he was selling out simply because of his bad health, which forbade him to engage in it any longer; that $30 to $50 a day were taken in over the counter; that the stock on hand was salable and worth $5,000; and he made various other representations as to the value of the articles sold, the value of the trade-mark, and the extent to which he was able to control the trade. He stated the machinery to be particularly valuable and especially made for him, and to be admirably adapted to the manufacture of gold pens, and that it could not be replaced for less than $15,000; that one reason his pens were so desirable was because of the excellence of this machinery. In addition, Foley stated to the plaintiff, at the time the contract was signed, that his profits the year before had been $15,000, which was undoubtedly false. He also stated that he had a lease of the store in which he was conducting the business for two years from May, 1899. He made many other statements as to the value of the business, the number of the orders which could be procured, the business that could be done, and the profits that could be earned. Right here it may be said that so far as these representations were promissory in their nature, and referred solely to what might be accomplished in the business, there can be no doubt that the plaintiff had no right to rely upon them, and he can have no relief on account of them, no matter how false they may have been; yet when it is considered that the plaintiff and his father were en-

tirely ignorant of this business, that the defendant had been engaged in it for many years, and was thoroughly familiar with all its details, these statements cannot be absolutely thrown aside, but must be considered for the purpose of enabling us to get at the state of mind of the plaintiff and his father, so that we can accurately ascertain the effect of those representations of fact and opinion made to them, who knew nothing about the business, by a man thoroughly conversant with it and its possible capabilities, which they did have a right to rely upon. So far as the representations of fact are concerned,—that Foley had a lease of the store for two years, that the machinery was especially made for him, that it was of modern construction, and that his profits during the previous year had been $15,000,—those were not true, and there is no pretense that they were. But the defendant insists that he made no such statements. We must assume, however, in considering the case, that the court below found for the plaintiff in that regard, and that these untrue statements were in fact made.

There is another class of representations, however, not purely of fact, but representing, to a very considerable extent, the opinions of the defendant. These were the statements that the machinery was worth $15,000 and that the stock was worth $5,000. It is quite clear from the testimony that these values were grossly exaggerated, and we must assume that they had great weight with the plaintiff in inducing him to enter into the contract; and the question is whether they were such as he had the right to rely upon in deciding to make the contract. In the case of Ellis v. Andrews, 56 N. Y. 83, it is said that a false statement as to the value of property, made by a vendor for the purpose of obtaining a higher price for it than he knows the value to be, is not sufficient to sustain an action for fraud; that the purchaser must rely upon his own judgment as to the value; but it has been said that this case carries the doctrine of exemption very far. Titus v. Poole, 145 N. Y. 414–425, 40 N. E. 228. An examination of the cases both prior and subsequent to this case shows that it stands upon its peculiar facts, and that the party defrauded by false statements as to matters of opinion may sometimes have relief. In the case of Simar v. Canaday, 53 N. Y. 298, it is said that all statements made by a vendor as to the value of the property sold are not mere matters of opinion, and if he makes them knowing them to be false, with the intent of misleading the vendee and inducing him to enter into the sale, and the vendee relies upon the statements, and is misled to his injury, he may avoid the contract. This is precisely the case at bar, where the plaintiff had no knowledge of the value of the property; he had no opportunity to make inquiries; he relied upon the statements of the vendor, which he had the right to rely upon, and he was misled by them. It is right here that the highly colorable statements of the vendor as to what might be done in this business become important. He was an old man, thoroughly acquainted with the business, talking to a man knowing nothing about it, and the general effect of his statements was that the business was one in which a great income could be made with very little risk. Taking all these things together, it is

quite clear that the particular statements as to the value of the property sold, and as to the value of the machinery and the stock on hand, were such that the plaintiff had the right to rely upon them in coming to his determination to make this contract. In the case of Hickey v. Morrell, 102 N. Y. 454, 7 N. E. 321, which was an action for falsely and fraudulently making representations to the plaintiff's injury, the representation relied upon was that the defendant's warehouse was fireproof on its exterior, and it was claimed that such a statement was one merely of opinion, for which, although false, the defendant was not liable. The court held, however, that the defendant was liable for the falsity of the statement; and in discussing the extent of the liability it was said that the exemption from liability for the expression of a false opinion only occurs when the opinion stands by itself, and is intended to be taken by itself, but that where it is intended to be relied upon, and the defendant knows that it is so intended, he is not in a situation to say that the plaintiff ought not to have relied upon it if he has done so to his injury. The same rule is laid down in the case of White v. Loudon, 90 Hun, 218, 28 N. Y. Supp. 619, and 36 N. Y. Supp. 1135, and cases cited, which was an action for the specific performance of a contract for the sale of real estate, in which the defense was that the defendant had been induced to enter into it by the plaintiff's false representations, and the complaint was dismissed. In that case it was said that statements of the value of property, made in negotiations for its sale, standing alone and made without fraudulent intent, where the property is equally open for examination by all the parties, and where the person making the representations has no superior knowledge and does not speak as an expert, cannot afford ground for an action against the vendor, even though the statements were false. Where the parties, however, do not stand upon an equal footing, and the purchaser must to some extent rely upon the opinion of the seller in determining whether he will purchase, statements made with a view of influencing, and which do influence, the purchaser, become statements of fact, and if they are false, and are intended to defraud the purchaser, he may recover damages from the seller. This is the correct rule to be applied in cases of this kind. We must assume that these representations of value were made, and there is no substantial dispute that they were not correct. If the plaintiff had the right to rely upon them, as he certainly had, they afford a sufficient reason for his rescission of the contract, unless for some other reason he was not entitled to do so. It is said, however, that the finding of the court was not warranted by the evidence, and upon this point great stress is laid upon the fact that the defendant was willing to take a mortgage as part of the purchase price, all of which, excepting the interest, was to be paid out of the profits of the business. Undoubtedly this is entitled to consideration, but it is not sufficient to overthrow the other inferences in this case. There is no dispute that the plaintiff paid to the defendant $4,000 in money, and a careful examination of the record leads to the conclusion that a finding that the actual value of the property was not equal to this sum would not be set aside as against the evidence, because the stock was not worth over $3,000 and the value of the machinery did not

exceed $500. It is true that there was a business sold in addition to the machinery and the stock, but it is quite certain that its value was much less than that put upon it by Foley, and what the plaintiff thought it was when he bought the property, even if it was worth anything, which is doubtful. Upon the whole case, therefore, the court was correct in finding that the plaintiff was induced to enter into this contract by the false representations of Foley, and that he was justified in rescinding it.

It is claimed, however, that because of the plaintiff's delay in making the rescission he has lost his right to do so. The plaintiff took possession on the 24th of August, 1898. It was a business property. The business had undoubtedly been neglected for a long time because of the ill health of Foley, and of that fact the plaintiff became aware shortly after he took possession. There is no doubt, and it was stated by Foley in his letters, that it would take some time to bring the business back to the place it occupied before his illness, and although the plaintiff expressed his disappointment about the state of the business very shortly after he had taken possession, yet the letters of Foley show that he was then told that this was his own fault, that he had not yet been in possession long enough to make the business a success, and that he ought to continue. It is fair to assume that the delay in rescinding was due almost entirely to the statements of Foley himself that, if the plaintiff should continue in the business, he would undoubtedly be able to make it a success. For this reason we think that the delay of some months, which ordinarily would not be permitted, was in this case excused.

It is also said that the business failed to be a success because of the incompetency of the plaintiff. In respect of this matter, all that is necessary to be said is that the action was brought to rescind the contract because of the false representations of the defendant as to the condition of the business and property at the time the sale was made, and, if it was not as Foley stated it to be at that time, the inability of the plaintiff to make the business a success affords no reason why he should not rescind the contract because of the false statements.

So far as Foley is concerned, the judgment should be affirmed; but the judgment not only cancels the mortgage which was given to Mrs. Foley, but gives to the plaintiff a personal recovery against her for the money which was paid to Foley. In this we think the learned justice erred. It cannot be said that Mrs. Foley took such part in the negotiations as to make her personally responsible for the damages the plaintiff suffered, and all the remedy which he is entitled to against her is to have the mortgage given to her set aside. The $4,000 was paid to Foley alone, and there is nothing to show that Mrs. Foley received any benefit from it. For that reason the court below was not warranted in directing a personal judgment against Mrs. Foley for this money, and the judgment must be modified by striking out so much as directs the recovery of $4,098.33, and interest, against Mrs. Foley, and, as thus modified, affirmed, with costs to the plaintiff against John Foley alone, and without costs in this court against Mrs. Foley. All concur, except VAN BRUNT, P. J., and O'BRIEN, J., who dissent.