(85 Misc. Rep. 321).

## MERITAS REALTY CO. v. FARLEY et al.

(Supreme Court, Special Term, Nassau County. April 28, 1914.)

VENDOR AND PURCHASER (§ 36*) — FRAUDULENT REPRESENTATIONS — MATTERS OF FACT OR OF OPINION—VALUE.

A vendor, an experienced real estate agent, took the purchaser to see lots, but kept in his company so that he had no opportunity for making an independent inquiry as to value. He represented that the lots which he was offering for $640 each were worth $700; that the price had been

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

advanced to $700 and would shortly be further advanced to $750; that the purchaser would never have to pay the purchase-money mortgage, as he would sell the lots for the purchaser at a profit of $1,000 before the mortgage became due, all of which statements were known-by the vendor to be false. *Held*, that they were something more than the expressions of opinion, and were statements of fact, and hence vitiated the transaction.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 40, 52, 53; Dec. Dig. § 36.*]

Action by the Meritas Realty Company against Edson J. Farley and another. Judgment for defendants.

Henry W. Benton, of Saratoga Springs, for plaintiff.
Edson A. Hayward, of Oneonta, for defendant Farley.

BENEDICT, J. This is an action to foreclose a mortgage covering seven lots at Westbury, Long Island; each lot being about 20 by 100 feet in area. The plot was sold by the plaintiff to the defendant Edson J. Farley in October, 1910, for $640 a lot, or $4,480 in the aggregate, of which one-fourth, or the sum of $1,120, was paid in cash at or before the delivery of the deed, and the balance, amounting to $3,360, was secured by the vendee's bond and purchase-money mortgage due in two years with interest at 6 per centum payable half yearly. The action is defended by Edson J. Farley, a defendant, on the ground that he was induced to purchase the property through the false and fraudulent representations which were made by the plaintiff's representative, Franklin P. Narber, its president and manager. These representations are set out at length in the second paragraph of the answer as follows:

"That for the purpose of procuring this defendant to make and execute and deliver said agreement, take the aforesaid deed, and execute and deliver said bond and mortgage and pay to said plaintiff company the aforesaid sums of money hereinbefore alleged to have been paid by him, the said plaintiff company represented to this defendant that it had been promoted and was being promoted and managed by one Franklin P. Narber, a clergyman of the Baptist Church, and that it was promoted, formed, and managed by said Franklin P. Narber for the express purpose of aiding and helping and furnishing financial assistance and profits to ministers of the gospel and worthy Christian people, especially for the ministry of the Baptist Church, and that said plaintiff company was in the position, in view of the fact that the defendant was a minister of the gospel connected with the Baptist Church, to furnish him lots and would furnish to him seven lots described in the complaint herein at the price of $640 each, while said lots were actually of the value and were marketable at $700 each, and that the value of the said parcel of real estate was well known to the plaintiff company, and that it then was at least $4,900. That the manager of the said property was an expert in relation to the value of such property and had positive knowledge as to the value thereof and as to how the same could be marketed so that no loss could occur. That because said plaintiff company desired to assist such people as this defendant it would upon his making an agreement, a copy of which is hereto attached marked 'A,' and taking the title deed and executing the bond and mortgage care for said property, control and handle the same for this defendant and sell the same for defendant and make for him, this defendant, a large sum of [money] on his investment, and that said plaintiff company had no other then present intent or purpose. That this plaintiff corporation was promoted, formed, and managed for the express purpose of ascertaining the value of such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property, caring for, controlling, and handling the same and disposing of the same for such worthy people and ministers of the gospel to enable those, who were situated so they could not for themselves make their investments and handle their money and property, and who did not know the values, to realize a large profit thereon and receive the advantages of those experienced in obtaining the profits in the advance of real estate, and that the defendant would not be required to give any attention whatever to the proposition. That it was the intent and purpose for which the plaintiff company was formed and then managed and conducted to care for such real estate and to sell the same for the purpose of procuring benefits and furnishing financial assistance to such worthy persons and ministers as aforesaid, and that the aforesaid property could be sold by the plaintiff company at an advance of at least $1,000 to this defendant in the spring of 1911, and that said defendant would not be required to pay the aforesaid bond or mortgage, as the property could at any time be sold for more than $4,480, and that said plaintiff company could at any time turn the same into money so that it would net more than $4,480 to the defendant. That before the said bond and mortgage became due this plaintiff company could and would arrange a sale of the property to this defendant's advantage and relieve him from the payment of said bond and mortgage. That the then present purpose and intent of the said company and the purpose for which it was formed and being managed was to do all of the things hereinbefore mentioned and to do good in the world by rendering assistance to worthy Christian people and ministers of the gospel, and that the said Franklin P. Narber, plaintiff's said manager and president, could do more good in the world by furnishing such financial assistance to such worthy people and ministers than in the pulpit."

These representations, the defendant asserts, were false and untrue and known by the plaintiff's representative, Narber, to be so when he made them, and were believed and relied on by the defendant; and he was by means of them induced to enter into the contract for the purchase of the property and to pay for the same in cash and by executing the aforesaid bond and mortgage. The defendant sets up the false representations both as a complete defense, upon which he asks cancellation of the instruments, and also as a counterclaim for the moneys paid to the plaintiff.

The plaintiff's president, Narber, did not upon the witness stand deny that he had made substantially all of the statements which the defendant alleges, but the plaintiff insists in its brief that:

"Representations made by a vendor of property as to value for the purpose of obtaining a higher price than he knows the property is worth will not sustain an action for fraud by a purchaser who contracted relying upon the statement. The purchaser must rely upon his own judgment as to value."

It also claims that the statements as to value were not false, and it produced some witnesses in the futile effort to prove that the value of the lots at the time of the sale was approximately what it was represented to be by the plaintiff's president.

The defendant upon the trial showed by several witnesses of responsibility and trustworthiness that Narber claimed to be a minister of the gospel who had given up preaching what he claimed to be the truth to engage in the real estate business for a commission, and that he professed a desire to help ministers and other worthy people connected with churches to add to their incomes by safe investments in Long Island real property; that to this end he would go into small communities in the interior of the state and by letters of introduction would strive to interest ministers and other persons of local influence

in such investments, promising them a commission (which in one instance was equal to 10 per centum of the selling price) to persuade persons of their congregations or communities to buy from the company which he represented and which in fact he had organized and in which he was largely interested as an owner.

Upon one occasion he preached in a local church to the entire satisfaction of the witness who heard him, and who testified that it was a good sermon with such effect that thereupon a sale was made to one of the hearers, with the resultant commission of 25 per centum to Narber.

I believe from the evidence that the seven lots for which the defendant agreed to pay $640 each were not worth one-half that sum at the date of the sale, nor over $250 each, and I believe that Narber knew that to be true and deliberately misrepresented their value to the defendant after having gained his confidence and lulled his suspicions to sleep under the guise of religious interest and friendship; but I am required to decide in this case whether as matter of law he did not keep within the law in thus overreaching his too-confiding brother. Unfortunately there is no statutory or legal method by which men can be made cautious or conservative in their investments, and so they frequently become the dupes of designing persons whose operations, while wholly indefensible in the realms of morals or religion, do not always infract penal statutes nor substantive law.

The question at issue in this case resolves itself, therefore, into the inquiry whether or not the alleged misrepresentations were made merely as an expression of opinion as to present value or as statements of facts. The plaintiff relies upon Ellis v. Andrews, 56 N. Y. 83, 15 Am. Rep. 379, where the court said:

"Upon the question of value the purchaser must rely upon his own judgment; and it is his folly to rely upon the representation of the vendor in that respect."

This case was followed in Van Slochem v. Villard, 207 N. Y. 587, 101 N. E. 467. There are, however, some cases in which the doctrine of Ellis v. Andrews has been distinguished by the courts in an effort to render substantial justice where the vendee was not in a position where he had or could obtain information as to the real value of the property sold, such as was possessed or claimed by the vendor. See Chrysler v. Canaday, 90 N. Y. 272, 43 Am. Rep. 166, reconciling Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 523, with Ellis v. Andrews, supra; Titus v. Poole, 145 N. Y. 414, 425, 40 N. E. 228; White v. Loudon, 90 Hun, 218, 28 N. Y. Supp. 619, 36 N. Y. Supp. 1135; Jackson v. Foley, 53 App. Div. 97, 103, 65 N. Y. Supp. 920; Daiker v. Strelinger, 28 App. Div. 220, 224, 50 N. Y. Supp. 1074. The rule to be drawn in these cases is well stated in White v. Loudon, supra (90 Hun at page 224, 28 N. Y. Supp. at page 623):

"The present value of property depends upon what it will bring in the market, and whatever influences surround it, conditions adhere to it, or prospects attend it, that form a well-grounded belief in the minds of the public as to its value, impart a value to it. So that when a man who is familiar with real estate, as Johnson was, and engaged in the business of selling it, and assuming to have peculiar knowledge in relation to it, represents to persons,

living at a great distance, who have no opportunity to examine the property or ascertain the conditions that surround it, that its value is a certain amount, it ceases to be speculative and becomes an affirmation of fact. That is, a fact based upon his knowledge and experience and judgment, all of which he is supposed to marshal together as a basis of his statement as to the value.

"The counsel for the plaintiff, realizing the difficulty of applying the rule of caveat emptor to these defendants, says they might have gone to Buffalo while the negotiations were pending, as they had but a night to ride, and have seen this property for themselves. The law did not impose any such duty upon these defendants. Had they gone to Buffalo they could have learned but little about it, unless they spent considerable time in the investigation of the property, its value and surroundings; and it does not lie in the mouth of the plaintiff to say that he is protected from the fraudulent statements of his agent upon any such hypothesis.

"The defendants, situated as they were, had the right to rely upon these statements, and did rely upon them, and they were false. They worked an injury to the defendants. Johnson must have known they were false, or at least highly exaggerated. He assumed to state that they were true. He assumed to these defendants to know that they were true. If he did not know the exact facts that he represented were true (as he claimed upon the stand), he should have known it, and as he represented them to be true with a fraudulent intent as to these defendants, who had no opportunity to test their truth, his statements are as fraudulent and as actionable as though he knew they were not true.

"The plaintiff's counsel says that no doubt Mr. Johnson puffed up the lands, or engaged in some puffing, to these defendants. Under the circumstances of this case, Johnson should have indulged in no puffing. If a man has a horse before him or a farm in sight which he is trying to sell, and the purchaser being present and having an opportunity to judge of the exact value of any exaggerated statement he may make, he may be pardoned perhaps in the course of the trade and in the anxiety to make a good bargain for doing a little 'puffing'; but when he goes to a distant state and seeks persons who are entirely unacquainted with the property he seeks to sell, and who have to rely, and do rely, upon his word, he should indulge in no 'puffing,' no exaggeration, but simply tell the unvarnished truth in all particulars. Frauds of this character are entirely too common; they seem to increase with the growth of great cities and in the hot strife of booming localities, and they deserve condemnation whenever a clear case is established."

In the case at bar, Narber, after awakening in the defendant an interest in the property, persuaded him and his wife to make a trip from Oneonta, N. Y., to Westbury, Long Island, and showed the lots to him, and then took him back to his home, but always carefully keeping in his company so that the defendant had no opportunity for making an independent inquiry as to the value of the property until after the contract had been signed. The entire situation is illustrated by the statement, which the defendant made to Narber after seeing the lots, that he could not see the value in them which Narber asserted, and that, while he did not believe in the lots, he did believe in Narber and would take them upon his assurance as to their value and his further assurance that he (Narber) would sell them at a good profit before the mortgage should fall due.

Under such circumstances, good faith required that Narber should neither have represented facts to be true which he knew to be false, nor facts which he did not then know and believe to be true.

He knew that the lots which he was offering to the defendant at $640 each could not then be sold at $700 each, and he had no grounds for the statement that he could sell the lots at that time for more than

Farley was paying for them, that the price had been advanced on October 1st to $700 and would shortly be further advanced to $750, nor that Farley need not give any thought to the mortgage as he would never have to pay it, nor that he could sell the lots in the spring so as to realize a profit of $1,000 for the defendant. These statements, in view of his superior knowledge of the real value, "were something more than expressions of opinion; they were statements of facts; and if such statements were false, and made with the intent to defraud, and did defraud, then they vitiated the transaction." Daiker v. Strelinger, 28 App. Div. 224, 50 N. Y. Supp. 1074.

Judgment for defendants as prayed for in their answer, with costs.