MERRY REALTY COMPANY, INC., Plaintiff, *v.* HARRY B. MARTIN et al., Defendants.

(Supreme Court, Kings Special Term, March, 1918.)

False representations — actions — real property — deceit — damages — liability of seller — values.

Foreclosure — of mortgages — fraud — damages — contracts — judgments — costs.

> The general rule that a mere expression of opinion as to the value of property one is trying to sell cannot be made the basis of an action for deceit does not apply where the representation as to value becomes not a mere expression of opinion but an allegation of fact.

Where the buyer has not equal means of knowing the value and he is induced by the seller to forbear making inquiry and damage results, or where the seller knows that the buyer has no knowledge of the value of the property although he in no way induced him to forbear making inquiry and especially where the seller is an expert as to the value of the property offered for sale, and the buyer is not, a false and fraudulent representation as to its value if relied on by the purchaser makes the seller liable.

In an action to foreclose a mortgage in which the owner of the premises sought to have the contract of purchase rescinded for fraud and to recover damages, it appeared that a certain real estate company through the instrumentalities of G., one of the two principal officers of plaintiff, both of whom owned and controlled all of its stock, made a contract to exchange for certain lots valued at $25,000 free and clear an apartment house, G. representing it to be worth $65,000 subject to a first mortgage of $34,000 and a second mortgage for $6,000. The apartment house, to the knowledge of plaintiff's principal officers who knew its real value, was worth not more than $44,000, but they misrepresented its value for the purpose of defrauding the owner of the lots. G. further falsely represented to said real estate company that the apartment house was owned by one M., when in fact it was owned by plaintiff. Pending the negotiations with the real estate company plaintiff conveyed the property to M., a mere dummy, who paid nothing for the property and had no interest in it and he executed a so-called purchase money mortgage, the one in suit. Though the contract of exchange was drawn in the name of M. and the deed executed by him to the real estate company, the entire transaction was in reality with plaintiff. The fact that G. and P., the principal officers of plaintiff, were equal partners in a real estate business was not known to the real estate company, nor did it know that either of them had any interest in the apartment house or in any company which owned it, but these facts were not only carefully concealed by G. and P. but they represented that G. was a real estate broker. *Held*, that all the elements in an action of fraud are established and defendant is entitled to a judgment satisfying, canceling and discharging of record the mortgage in suit and, in addition, to a money judgment for damages and for the amount of commissions paid by it, with interest from the time the transaction was closed, together with costs against the plaintiff and an extra allowance.

ACTION to foreclose a mortgage.

John M. O'Neill, for plaintiff.

Herbert A. O'Brien, for defendant Shamokin & Hollis Real Estate Company, Inc.

CROPSEY, J.  The action is to foreclose a mortgage. The owner of the property defends, claiming it purchased the property through the false representations of the plaintiff.  The owner seeks to have the contract rescinded or to recover its damages.  The facts as found are these: The Shamokin & Hollis Real Estate Company was composed of people living in Shamokin, Penn.  That company owned some vacant property at Hollis, L. I.  It had owned that property for years and was anxious to dispose of it.  Its officers spoke to a man named Promuk who resided in Pennsylvania in the same town with the president of the Shamokin Company and was well known to him. Promuk referred the Shamokin people to a man named Green in Brooklyn, telling them Green was a very reliable real estate agent and assuring them they could rely on what he told them, and that he could probably find some property which could be exchanged for their lots.  The Shamokin people got into communication with Green and later, through Green's instrumentalities, made a contract to exchange their lots for an apartment house on Bergen street, Brooklyn.  Green represented the apartment house to be worth $65,000 and to be subject to a first mortgage of $34,000 and a second mortgage of $6,000.  The Shamokin Company's lots were put in as being worth $25,000.  They were free and clear. The apartment house was worth not more than $44,000, and its real value was known to Green and Promuk. They misrepresented its value for the purpose of defrauding the Shamokin Company.  Green further

represented to the Shamokin people that the apartment house was owned by a builder named Martin. This statement was untrue, as Green knew. The apartment house was owned by the Merry Realty Company, the plaintiff, and Green and Promuk were its principal officers and owned and controlled all of its stock. Pending the negotiations with the Shamokin people the plaintiff conveyed the apartment house to a man named Martin who was an osteopathic physician. Martin was merely a dummy, paid nothing for the property and had no interest in it. He executed to the plaintiff a so-called purchase-money second mortgage for $6,000, which is the one sought to be foreclosed. When the contract of exchange was made it was drawn in the name of Martin and the deed was executed by Martin to the Shamokin Company. The entire transaction was in reality with the plaintiff and not with Martin.

Green was in the real estate business under the name of Green & Co. Promuk was the " Company." He and Green were equal partners in that enterprise. This fact was not known to the Shamokin people nor did they know that either Green or Promuk had any interest in the apartment house or in any company which owned it. These facts were concealed by Green and Promuk and, on the contrary, they represented that Green was a real estate broker. The contract of exchange provided for a commission being paid to Green and $625 was paid by the Shamokin people to him. This was shared equally by Green and Promuk. So Green and Promuk not only sold their apartment house for much more than it was worth but also received a commission from the purchaser in addition.

That Green and Promuk defrauded the Shamokin people is established conclusively. The Shamokin people knew nothing about real estate values in Brook-

lyn and so advised Promuk and Green. They further told Promuk and Green they would rely on their statements as to the value of the apartment house. And in fact they did rely on them. While they visited the apartment house before they made the contract they did not know its value and made no inquiries about it. They relied upon the representations as to its value made by Green and Promuk. And both Green and Promuk knew that the Shamokin people were relying upon their representations. Green had been represented by Promuk as being not only reliable but also as being an expert in the real estate business and the Shamokin people were assured they could rely on what he told them.

All the elements of an action in fraud were established. But the plaintiff contends that the representations of its officers as to the value of the apartment house cannot be made the basis of an action to rescind or for damages. It is the general rule that a mere expression of opinion as to the value of property one is trying to sell cannot be made the basis for an action for deceit. *Titus* v. *Poole,* 145 N. Y. 414–425; *Seis* v. *Plaisantin,* 52 App. Div. 206; *Van Slochem* v. *Villard,* 207 N. Y. 587. It is deemed not to be the representation or statement of any fact. But this rule has frequently been relaxed in the interests of justice and to prevent the successful perpetration of fraud. *Andrews* v. *Jackson,* 168 Mass. 266, 268; *Whiting* v. *Price,* 172 id. 240, 242. And there are many situations in which the rule does not apply and in which the representation as to value becomes an allegation of fact and not merely an expression of opinion. This is true where the buyer has not equal means of knowing the value and where he is induced by the seller to forbear making inquiry, and damage results. *Simar* v. *Canaday,* 53 N. Y. 298, 306, 307; *Chrysler* v. *Canaday,*

90 id. 272, 277–279. See, also, *Hickey* v. *Morrell*, 102 id. 454, 463; *Schumaker* v. *Mather*, 133 id. 590, 595. And this is equally true where the seller knows that the buyer has no knowledge of the property's value although he in no way induced him to forbear making inquiry. *White* v. *Loudon*, 90 Hun, 218; *Daiker* v. *Strelinger*, 28 App. Div. 220; *Jackson* v. *Foley*, 53 id. 97, 102, 103; *Drake* v. *Grant*, 4 N. Y. Supp. 899; *Kilgore* v. *Bruce*, 166 Mass. 136, 138. And especially where the seller is an expert in the value of the thing offered for sale, and the buyer is not, a false and fraudulent opinion as to its value, if relied on by the purchaser, makes the seller liable. *Powell* v. *Fletcher*, 18 N. Y. Supp. 451. The facts found in this case bring the Shamokin people clearly within these exceptions to the general rule.

The fact that the Shamokin Company's property was valued in the contract at $25,000 when it was worth but $16,000 does not affect the question. There is no claim that that company intentionally misrepresented the value of its lots. Nor is there any claim that the plaintiff relied upon that representation or was deceived by it. The plaintiff's officers undoubtedly knew the value of the Hollis lots.

The plaintiff urges that the defendant cannot succeed as there is no proof of the tender of any deed by it " prior to the bringing of suit." No such tender was necessary in this case. The defendant's counterclaim was for a rescission of the contract or for the damages it had sustained. In an equitable action for a rescission it is not necessary to make a tender prior to its institution — an allegation in the complaint of a readiness to return what had been received is sufficient. *Vail* v. *Reynolds*, 118 N. Y. 297, 302; *Callanan* v. *Keeseville, A. C. & L. C. R. Co.*, 199 id. 268, 285. And in an action to recover damages for the fraud no ten-

der at all is necessary. *Heckscher* v. *Edenborn,* 203 N. Y. 210, 220; *Whiting* v. *Price,* 172 Mass. 240, 243; *Arnold* v. *Teel,* 182 id. 1, 2.

The plaintiff further complains that the defendant did not claim it had been defrauded until after the interest on the second mortgage became due. While this might have some bearing on the main question of fact it has none on the law of the case. The proof shows that the defendant began an action against the plaintiff for rescission and damages shortly after it discovered the fraud and before the present action was started. If a purchaser wishes to rescind a contract procured through fraud he must act with reasonable promptness after he acquires proof of the fraud, and that the defendant did. The purchaser is under no duty to be vigilant to discover fraud. *Baker* v. *Lever,* 67 N. Y. 304, 309. But in an action for damages caused by the fraud there is no rescission and such an action can be brought at any time.

The plaintiff's apartment house, which the defendant now owns, was worth $44,000. It was mortgaged for $34,000, exclusive of the $6,000 mortgage in suit. The defendant's lots were worth $16,000. Thus the difference in the equities is $12,000. This is the sum the defendant is entitled to recover from the plaintiff. The defendant should also recover the " commission " it paid of $625. It was damaged in that additional amount by the fraud of the plaintiff, and the rule of damages is such as will be just under the circumstances of each particular case. *Kilgore* v. *Bruce,* 166 Mass. 136, 139. The defendant is entitled to a judgment satisfying, canceling and discharging of record the mortgage in suit for $6,000, and for a money judgment against the plaintiff for the balance of its damages, namely, $6,625, with interest from the time the transaction was closed. The defendant is also entitled

to costs against the plaintiff and an extra allowance of $500.

Findings submitted by the plaintiff have been passed upon. The defendant should submit findings and a judgment in accordance with this decision.

Judgment accordingly.