HANNAH JEANETTE THOMPSON, Plaintiff, *v.* ROBERT H. THOMPSON, Defendant.

Supreme Court, New York County, June 21, 1929.

*Battle, Miller, Levy & Van Tine* [*George Gordon Battle* of counsel], for the plaintiff.

*Brush & Crawford* [*J. B. Coleman* of counsel], for the defendant.

COTILLO, J.   The plaintiff sues in equity to cancel and set aside an agreement entered into between her and her then husband and for restitution to her of the property delivered to the defendant under the agreement on the ground that her consent thereto was induced by fraud.

The defendant during his married life with the plaintiff had given

her 900 shares of the capital stock of the Thompson & Norris Company, a closed corporation owned by the defendant and his family. His married life apparently turned out to be an unhappy one, and thereafter he and the plaintiff separated. A foreign divorce was then contemplated by the parties while they were living apart, and in anticipation of this divorce the agreement now before the court was drawn. Both plaintiff and defendant were represented by attorneys, and the fee for the plaintiff's attorney was paid by the defendant. By the terms of the agreement this defendant was to deposit with the Title Guarantee and Trust Company the sum of $83,000, and the plaintiff was to deposit the 900 shares of stock of the Thompson & Norris Company, duly assigned in blank in such form as to pass title by delivery, and also to deposit with the trust company releases of all her inchoate right of dower in and to all the parcels of real property of which the plaintiff was seized as tenant in common. The $83,000 was to be in payment of the 900 shares of stock, and by the terms of the agreement was to be in full satisfaction of any and all claims the plaintiff might have against the defendant for maintenance and support.

The fraud which the plaintiff alleges induced her to enter into the agreement consists in representations made to her by one Crawford, the attorney for, and concededly the agent of, the defendant. These consisted of statements made by Crawford and acquiesced in by the defendant concerning the value of the stock. Plaintiff testified that Crawford stated that the stock was worth only $75 a share, and that the Thompson & Norris Company had suffered a loss of $1,500,000 in one of its subsidiaries. This statement was made by Crawford to the plaintiff and her lawyer in the negotiations leading to the signing of the agreement.

The plaintiff's case depends upon the representations made by the defendant through his agent Crawford as to the value of the stock held by the plaintiff in the Thompson & Norris Company. The defendant contends that, as the representations made to the plaintiff were purely representations as to the value of the stock, this action for rescission will not lie. It is a well-known and general rule that representations of value, being a mere matter of opinion, will not support an action of this kind, but that rule has many exceptions, of which the following are pertinent illustrations: *First,* that plaintiff did not have means equal to those of the defendant of knowing the value of the stock. *Second,* that the defendant, aware that the plaintiff had no knowledge of the value of the stock, intentionally and through his agent gave what he knew to be a false opinion relied on by the plaintiff. *Third,* that the defendant was

an expert in the value of the stock and plaintiff was not, and she relied upon the opinion given by the defendant and his agent.

In these situations an opinion given as to the value of property is held to be a representation of fact, and, if untrue, is actionable. It is the plaintiff's contention that the case at bar fits within every one of these divisions, and that on each of these grounds the statement made that the Thompson & Norris Company stock was worth no more than seventy-five dollars per share was a statement of fact and not of opinion, and that it may form the basis of an action, and the fact that this plaintiff because of the disposal of all the assets of the corporation cannot identify the proceeds of the fraud among the assets of the defendant is not fatal to recovery, if she is otherwise entitled thereto.

The defendant in his argument urges strenuously the opinion in *Van Epps* v. *Harrison* (5 Hill, 63, 69) as his authority in support of his motion to dismiss the complaint. In that case it was said: " It often happens in the making of bargains that many things are said which neither party regards of much consequence; and if the buyer trusts to representations which were not calculated to impose upon a man of ordinary prudence, or if he *neglects the means of information* easily within his reach, it is better that he should suffer the consequences of his own folly, than to give him an action against the seller."

There can be no quarrel with the doctrine when the facts of the case fall within that category. But a materially different state of facts exists in the case at bar. All information in relation to the value of the stock was particularly within the knowledge of the defendant and his attorney. Who could know more of the value of this family corporation than the defendant and his attorney? They had complete access to the books and full knowledge of his business. The plaintiff had only casual facilities for acquiring knowledge of the value of the stock, that being from her husband or his attorney and agent. The conclusion is inevitable that the plaintiff, not knowing the value of the Thompson & Norris Company stock, must of necessity have made inquiries of Crawford concerning the same, and relied upon the information furnished by him.

The court feels that an examination of the circumstances surrounding the agreement shows that the plaintiff and defendant did not deal at arm's length in that agreement. As was said in *Cowee* v. *Cornell* (75 N. Y. 91, 99): " Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side *from superior knowledge of the matter* derived from a fiduciary relation, or from overmastering influence,

or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered *probable*, there the burden is shifted, *the transaction is presumed void*, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, *no undue influence was used, and that all was fair, open, voluntary and well understood.* This doctrine is well settled." (Italics ours.)

It seems to me that this action comes squarely within the decision of *Merry Realty Co., Inc.,* v. *Martin* (103 Misc. 9; affd., 186 App. Div. 538). The following language of Judge CROPSEY is very enlightening on controversies of this kind: " All the elements of an action in fraud were established. But the plaintiff contends that the representations of its officers as to the value of the apartment house cannot be made the basis of an action to rescind or for damages. It is the general rule that a mere expression of opinion as to the value of property one is trying to sell cannot be made the basis for an action for deceit. (*Titus* v. *Poole,* 145 N. Y. 414, 425; *Seis* v. *Plaisantin,* 52 App. Div. 206; *Van Slochem* v. *Villard,* 207 N. Y. 587.) It is deemed not to be the representation or statement of any fact. But this rule has frequently been relaxed in the interests of justice and to prevent the successful perpetration of fraud. (*Andrews* v. *Jackson,* 168 Mass. 266, 268; *Whiting* v. *Price,* 172 id. 240, 242.) And *there are many situations in which the rule does not apply and in which the representation as to value becomes an allegation of fact and not merely an expression of opinion.* This is true where the buyer has not equal means of knowing the value and where he is induced by the seller to forbear making inquiry, and damage results. (*Simar* v. *Canaday,* 53 N. Y. 298, 306, 307; *Chrysler* v. *Canaday,* 90 id. 272, 277, 279.) (See, also, *Hickey* v. *Morrell,* 102 id. 454, 463; *Schumaker* v. *Mather,* 133 id. 590, 595.) And this is equally true where the seller knows that the buyer has no knowledge of the property's value although he in no way induced him to forbear making inquiry. (*White* v. *Loudon,* 90 Hun, 218; *Dailker* v. *Strelinger,* 28 App. Div. 220; *Jackson* v. *Foley,* 53 id. 97, 102, 103; *Drake* v. *Grant,* 4 N. Y. Supp. 899; affd., 52 Hun, 611; *Kilgore* v. *Bruce,* 166 Mass. 136, 138.) And especially where the seller is an expert in the value of the thing offered for sale, and the buyer is not, a false and fraudulent opinion as to its value, if relied on by the purchaser, makes the seller liable. (*Powell* v. *Flechter,* [Com. Pl.] 18 N. Y. Supp. 451.) " (Italics ours.)

A representation made recklessly, heedless of its truth or falsity, is the equivalent of a representation made with the knowledge of its falsity. The entire record before me shows that Crawford,

who was acting as the agent of the defendant in negotiating the agreement with the plaintiff, was thoroughly familiar with and had in his possession all the information concerning the value of the Thompson & Norris stock. There is no question in my mind that the stock at the time of the negotiation of the agreement was known to both Crawford and the defendant to be worth considerably more than $75 a share. The book value of the Thompson & Norris stock, as shown by the balance sheet of that company on December 31, 1925, was $94 a share, which figure did not include any allowance for good will and other intangibles. In view of subsequent developments of the company and the sale of its stock one year later for a price which with assets retained by the seller figures at over $150 a share, I believe that $125 a share was the fair market value of the stock at the time of the agreement. This value impresses me as fair by reason of the fact that, at the time of the sale to the Hinde & Dauch Company one year later at a price equivalent to $150, there was no material increase in the tangible assets of the company.

The complaint having alleged all the elements requisite to sustain an action in equity, the exact form of relief demanded is immaterial. The decree made will be molded to fit the case as it stands at the close of the proof. (*Lightfoot* v. *Davis*, 198 N. Y. 261.)

I, therefore, conclude that it would be unjust and inequitable to permit the defendant to secure the fruits of his unjust and unfair dealing with his wife through his legal representative, and the court, therefore, feels constrained to grant judgment for the plaintiff. Submit findings of fact and conclusions of law, on notice, together with a proposed judgment fixing the value of the stock at $125 a share.