CHARLES M. TITUS, Respondent, *v.* CHARLES F. POOLE et al., as Executors, etc., Appellants.

It is not essential to the validity of a claim against the estate of a deceased person that it be stated with legal precision; it is sufficient if the transaction out of which the claim arises is identified, its general character indicated without technical formality and the amount of the claim stated.

A party presenting such a claim, which is rejected, cannot evade the Statute of Limitations prescribed in such cases (Code Civ. Pro. § 1822) by successive presentations of claims founded on the same transaction, but varying in form or detail.

Where, therefore, a claim was presented against an estate for an amount stated which was alleged to be due from the decedent in his lifetime on exchange of real estate for which he "fraudulently assigned" to the claimant a worthless certificate of alleged bank stock, which claim was rejected by the executors and thereafter a second claim was presented based on the same transaction, but setting out the representations made by the decedent in regard to the stock as a warranty instead of a fraud, which claim was also rejected, and more than six months after the rejection of the first claim an action was commenced based on a warranty, *held,* that plaintiff by the presentation of the original claim subjected himself to the conditions which attached on its rejection, and .the statute commenced to run against any cause of action founded upon the transaction embraced in the claim, whether for deceit or warranty.

But, *held,* that the provision of the chapter of the Code of Civil Procedure in reference to "limitations of the time of enforcing a civil remedy," which declares that if an action is commenced within the time limited therefor, and * * * the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff * * * may commence a new action for the same cause after the expiration of the time so limited and within one year after such * * * termination," applies to actions against an executor upon a rejected claim against his decedent; and so, as it appeared that an action for fraud based on the original claim was brought within the six months, in which action plaintiff was non-suited, and within one year thereafter the second action was brought, that the case came within the saving provision, and that the action was not barred.

It appeared that the certificate was of stock in a supposed banking corporation in another state; that P., defendants' testator, stated to plaintiff at the time of the transfer that the bank was a regularly organized

bank; that he was one of the .original or early stockholders ; that the stock was a dividend-paying stock; that it was worth 100 cents on the dollar, and was "good high stock," and that plaintiff thereupon agreed to and did take the stock at its par value. It also appeared that the bank was not incorporated, but was conducted by a partnership, and was at the time of the sale insolvent. *Held*, that the evidence justified a finding that the assertion as to the value and character of the stock was intended to be and was relied upon as a warranty, and for a breach thereof plaintiff was entitled to recover.

A vendor may give a warranty as to the value of the property sold, and if he makes a representation as to value, which is intended as a warranty, and it enters as a constituent element in the transaction, it becomes a part of the contract, and may be enforced as a warranty.

Reported below, 73 Hun, 383.

(Argued March 8, 1895; decided April 9, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made November 21, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for a breach of warranty on the sale of certain shares of stock.

In February, 1883, the plaintiff, Titus, and defendants' testator, E. V. Poole, entered into an agreement whereby Poole was to purchase of Titus certain hotel property in the city of Ithaca at an agreed price of. $9,000 ; $4,000 of which was paid by Mr. Poole assuming a mortgage for that amount then on the premises and $5,000 by assigning to Titus a certain certificate of the alleged bank stock of the "Home Savings Bank" of South Waverly, Pa., it being for 50 shares of one hundred dollars each.

The negotiation for the sale took place at Ithaca, where the plaintiff resided, and was consummated there February 9, 1883, under the supervision of Mr. Ellsworth, by the conveyance by the plaintiff to Poole of the hotel property subject to a mortgage of $4,000, and by the transfer and delivery by Poole to the plaintiff of the certificate. The certificate was printed and was in the following form :

"No. 33.        State of Pennsylvania.        50 shares.

"The Home Savings Bank.    Organized under act of Legislature of Pennsylvania.

"Authorized capital, $100,000.    Shares $100 each.

"Virtue, Liberty, Independence.

"South Waverly.

"This is to certify that E. V. Poole is entitled to fifty shares in the capital stock of the Home Savings Bank of South Waverly, transferable only on the books of the bank in person, or by attorney on the surrender of this certificate.

"South Waverly, *Dec.* 10*th*, 1874.

"S. KIRBY,

"*Prest.*

"C. E. PENDLETON,

"Endorsed:                              *Cash'r.*"

It was transferred to the plaintiff by the indorsement of Poole, signed to the blank power of attorney printed on the back.

The action was brought December 26, 1888, against the executor of Poole for the breach of alleged warranties made by Poole on the transfer of the stock to the plaintiff, viz.: (1) That the Home Savings Bank was a regularly organized bank under the laws of Pennsylvania; (2) that it was all right, and that the stock was good, high stock and worth one hundred cents on the dollar; (3) that it was a dividend-paying stock. There was but one witness as to the transaction between Poole and the plaintiff, and his evidence is uncontradicted. One of the parties was dead and the plaintiff was not a competent witness. Ellsworth testifies that the parties being present in his office, Poole produced the certificate of stock and that the witness opened and looked at it and then said: "This isn't stock; that is a savings bank; a savings bank has no stock;" and Mr. Poole said: "It is a regularly organized bank under the laws of Pennsylvania and has savings bank privileges." The witness further testified: "Mr. Poole said in answer to my statement it was good stock, worth 100

cents on the dollar; a dividend-paying stock; that he was one of the original, or one of the early stockholders; I don't know but he used the word 'first;' Mr. Titus said, 'If that is so, Mr. Poole, and it is all right, I will take the stock at $5,000 in the trade and deal.' He said the capital was all paid up; I think he told the amount, $100,000, if it was $100,000; he said $100,000 capital paid up. * * * He said it was worth 100 cents on the dollar and was good high stock. * * * I think he said what kind of hands the bank was in, but I do not recollect the language he used. Mr. Titus said at that time in Poole's presence, if the stock is all right as you say, we will make the trade or deal."

It appeared on the trial that the Home Savings Bank was not an incorporated bank, but was conducted by a partnership, of which one Kirby was the principal member. The business was established at Waverly, Pennsylvania, in 1873. It seems that in Pennsylvania there is no restriction upon individuals carrying on the business of private bankers. The laws of that state do authorize the establishment of banking corporations, subject to visitation, and the laws carefully guard the business of such corporations in the interest of stockholders and depositors. The capital stock of the Home Savings Bank was never paid up in full. When the stock in question was transferred by Poole to the plaintiff, there had been paid only the sum of $86,338. The evidence establishes beyond controversy that in February, 1883, the bank was hopelessly insolvent. It held the paper of Kirby to an amount nearly equal to its paid-up capital, and when the bank failed in 1887 the debt of Kirby amounted to $112,000, and but a small part of it has been paid. The public were not informed of the condition of the bank, and it was regarded by outsiders as solvent, and in some cases after that year the stock was sold in small amounts at par to persons who supposed the bank was incorporated. It paid occasional dividends from 1873 to 1887. It paid none in 1874, 1876, 1879, 1881, 1883, and none after 1884. The dividends when paid

were four per cent per annum, with the exception that eight per cent was paid in 1875.

Poole, the defendants' testator, died October .7, 1887, the same year that the bank went into bankruptcy, leaving a will by which he appointed the defendants his executors. May 7, 1888, the claimant presented a verified claim to the executors in words following : "Estate of Edward V. Poole, deceased. To Charles M. Titus, Dr. To amount due from E. V. Poole in his lifetime, on exchange of real estate for which a worthless certificate of alleged Home Savings Bank stock was fraudulently assigned to said Titus — $5,000, with interest on the same from February 10, 1883," together with written offer to refer the same. June 19, 1888, the executors rejected the claim. June 28, 1888, the plaintiff brought suit in the Supreme Court against the executors, founded on the transaction, and alleging fraud and deceit on the part of the testator in respect to the transfer of the stock and the making by him of representations (substantially like those set forth in the complaint in this action), which were alleged to have been false and fraudulent, and the plaintiff claimed $5,000 damages and interest from February 10, 1883. The action was tried in October, 1888, and resulted in a non-suit, on the ground that the facts proven did not constitute a cause of action. It was said on the argument that the precise ground of the non-suit was the failure of the plaintiff to prove the *scienter*. Subsequent to the non-suit, and on the 26th day of December, 1888, and more than six months after the rejection of the claim originally presented to the executors, the present action was brought, based on warranty and not on fraud. Before bringing the second action a second claim, based on the transaction of February 9, 1883, but setting out the representations as warranties, was presented and rejected. The action was tried before a jury, and resulted in a verdict for the plaintiff, $7,647.75, being the sum of $5,000, and interest thereon from February 9, 1883.

Other facts are stated in the opinion.

*David M. Dean* for appellants.   This action is barred by
the short Statute of Limitations (Code Civ. Pro. § 1882),
and is not saved from such bar by Code of Civil Procedure,
section 405.   (*Wintermeyer* v. *Sherwood,* 77 Hun, 197 ; *Gil-
lespie* v. *Wright,* 93 Cal. 169 ; *Titus* v. *Poole,* 60 Hun, 1 ;
*Raynor* v. *Laux,* 28 id. 35 ; *Eldred* v. *Eames,* 115 N. Y. 401 ;
*Lockwood* v. *Robbins,* 125 Ind. 398 ; *Hill* v. *Bd. Suprs.,* 119
N. Y. 344 ; *Ross* v. *Mather,* 51 id. 108 ; *Sibley* v. *Hastings,*
21 Hun, 110 ; *Degraw* v. *Elmore,* 50 N. Y. 1 ; *Neudecker* v.
*Kohlberg,* 81 id. 296.)   The statement that the stock was good
high stock and worth 100 cents on a dollar did not give
the purchaser a cause of action for breach of warranty.
(*Ellis* v. *Andrews,* 58 N. Y. 83 ; *Chrysler* v. *Canaday,* 90
id. 272 ; *Homer* v. *Perkins,* 124 Mass. 431 ; *Nash* v. *M. T.
I. & T. Co.,* 159 Mass. 437.)   The objection to the question,
" Would you have purchased it (the stock) at all if you had
known it was not an incorporated bank ? " was erroneously
overruled.   (*Hallstead* v. *Coleman,* 143 Penn. St. 354 ; *In re
Gibbs,* 157 id. 59.)   The books of the Home Savings Bank
and a transaction on the books of the Home Savings Bank
were improperly allowed in evidence.   (Code Civ. Pro. §§ 929,
930, 931.)   The evidence of the financial condition of the
Home Savings Bank in 1887 was improperly admitted under
defendants' objection.   (*Hutchings* v. *Hutchings,* 98 N. Y.
56.)

*F. E. Tibbetts* for respondent.   This action is not barred
by the Statute of Limitations.   (*Hayden* v. *Pierce,* 144 N.
Y. 572 ;   Code Civ. Pro. § 405 ;   *Hoyt* v. *Bennett,* 50 N. Y.
538.)   There was a warranty expressed and implied.   (*Hub-
bell* v. *Meigs,* 50 N. Y. 481 ; *Smeltzer* v. *White,* 92 id. 390–
399 ; *Chase* v. *Evarts,* 47 N. Y. S. R. 426 ; *Simar* v. *Cana-
day,* 53 N. Y. 298 ; *Hawkins* v. *Pemberton,* 51 id. 188 ;
*Shipper* v. *Bowen,* 122 U. S. 575 ; *Ross* v. *Terry,* 63 N. Y.
613 ; *D. Bank* v. *Jarvis,* 20 id. 226, 229 ; *Webb* v. *Odell,* 49 id.
583 ; *Mandeville* v. *Newton,* 119 id. 10, 14.)   The question,
" Would you have purchased it at all if you had known it was

not an incorporated bank? " was proper. (*King* v. *Fitch,* 2
Abb. Ct. App. Dec. 509.) The introduction of the books of
the Home Savings Bank, and of transcripts taken from them
as provided by sections 929 to 931 of the Code, was proper.
(*Titus* v. *Poole,* 73 Hun, 383 ; 1 Greenl. on Ev. § 93 ; *Burton*
v. *Drake,* 20 Wall. 125 ; *F. N. Bank of Whitehall* v. *Tisdell,*
84 N. Y. 655 ; *Van Sachs* v. *Kretz,* 72 id. 552.) This is an
action on contract, and, although plaintiff has alleged war-
ranty, he can recover, even though no warranty is proven, if
the thing bought is worthless, and if (as in the case at bar) an
offer to return has been made and refused. (*Stone* v. *Frost,*
61 N. Y. 614.)

Andrews, Ch. J. The principal question arises upon the
defense of the short Statute of Limitations applicable to
claims against the estate of a decedent, presented to an execu-
tor or administrator after the publication of notice for the
presentation of claims, pursuant to the order of the surrogate,
and disputed or rejected by him and not referred. Section
1822 of the Code of Civil Procedure, which is a substantial
re-enactment of a provision in the Revised Statutes, declares
that in such cases the claimant must commence an action for
the recovery of the claim against the executor or adminis-
trator within six months after the dispute or rejection ; or, if
no part of the debt is then due, within six months after a
part thereof becomes due, and "in default thereof, he and
all persons claiming under him are forever barred from
maintaining such an action thereupon, and from every other
remedy to enforce payment thereof out of the decedent's prop-
erty." It is plain that if section 1822 of the Code is the
only provision applicable to the case, the claim of the plaintiff
was barred at the time of the commencement of the action.
The decedent died October 7, 1887, and the executors having
duly advertised for the presentation of claims the claim of the
plaintiff was presented May 7, 1888, and was rejected by the
executors June 19, 1888, and not having been referred this
action was commenced December 26, 1888, more than six

months after the rejection of the claim. The claim, if any existed, was due at the decedent's death, and all the conditions existed which made the six months' limitation a bar to the action, if the section referred to is alone to be considered. The fact that a second claim was presented November 29, 1888, was immaterial. The claim then presented was founded on the same transaction as that specified in the claim first presented. It was for the same amount, and it differs from the claim originally presented only in the circumstances that it ignores the suggestion of fraud, and sets forth in detail the representations made by the decedent to induce the plaintiff to accept the certificate of stock in the Home Savings Bank, and treats them as warranties. The transaction set forth in the first claim was sufficient to apprise the executors that it was founded on the transfer of the certificate of stock by the decedent to the plaintiff, and that out of the transaction there might arise either an action for deceit or for breach of warranty, or for failure of consideration, and if a reference had then been had evidence to support either of these claims might have been given and a recovery had for either cause of action if established by evidence. Proceedings under the statute to determine claims against the estate of a decedent are informal. There are no pleadings in the ordinary acceptation of the term. It is not required that the claim presented shall be stated with legal precision. It is sufficient if the transaction out of which the claim arises is identified and its general character indicated, without technical formality, and the amount of the claim is stated. The plaintiff, therefore, by the presentation of his original claim, under the statute subjected himself to the conditions which attached on its rejection, and thereupon the statute commenced to run against any cause of action founded upon the transaction embraced in the claim, whether an action for deceit or for breach of warranty. The party who presents a claim which is rejected cannot be permitted to evade the Statute by successive presentations of claims founded on the same transaction, but varying in form or detail. The case is, therefore, to be considered as if the claim had been but

once presented at a period more than six months prior to the commencement of the present action.

It is conceded that if section 405 of the Code, in the chapter upon " limitations of the time of enforcing a civil remedy," is applicable to actions brought against an executor or administrator upon a claim against a decedent, which has been rejected by the executor or administrator after presentation, pursuant to notice, the cause of action was not barred when the action was commenced. The first action was brought within six months after the rejection of the claim, and terminated in a non-suit, and this action was brought within two months thereafter, but seven days after the expiration of the six months from the time of the original rejection of the claim. The case is, therefore, brought directly within the saving provision of section 405 of the Code, if applicable to this case. That section declares that " if an action is commenced within the time limited therefor, and a judgment therein is reversed on appeal, without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if he dies and the cause of action survives, his representatives, may commence a new action for the same cause, after the expiration of the time so limited, and within one year after such reversal or termination." The first action was terminated by non-suit, was not voluntarily discontinued, was not dismissed for neglect of prosecution, nor was there any final judgment therein on the merits, and the present action was brought within a year after the termination of the former action. The second action also was an action for the same cause as the first action, within the meaning of section 405. According to the nomenclature of actions the first was an action for fraud and the second on warranty — one *ex delicto* and the other *ex contractu*. It is often important to observe the distinction. But the same facts may often give a plaintiff the right to bring the one action or the other at his election, and when dealing with remedies with a view to determine

whether remedies applicable to actions of the one kind or the other are to be administered, it is common and proper to speak of the two remedies as based upon distinct and different causes of action, although the right in both cases is founded upon the same transaction.    But it cannot be supposed that the words "same cause" in section 405 were intended to have this narrow meaning.    Such a construction of a beneficial provision, intended to preserve and continue the right of parties, would be very inconvenient, and would often defeat the purpose of the statute.    The words were intended, we think, to remove the disability whenever a new suit was brought within the year, based upon the same transaction as the former one, without regard to its technical form, and was intended in part to prevent mere mistakes as to the form of the remedy from concluding the party from subsequently pursuing his real right under a more appropriate form of action.

Coming, therefore, to the question whether section 405 applies to actions under section 1822, it is to be observed that there could be no doubt of its application except for the provisions of section 414    That section, so far as it affects the question now under consideration, is as follows: " Sec. 414. The provisions of this chapter apply and constitute the only rules of limitation applicable to a civil action or special proceeding, except in one of the following cases:  (1) A case where a different limitation is specially prescribed by law, or a shorter limitation is prescribed by the written contract of the parties."  The general purpose of the exception in this section seems plain.   It was to preserve limitations prescribed by special statute or by the contract of parties, and to prevent any misapprehension that actions subject to special limitations by statute or contract were affected by the periods of limitation prescribed in chapter four in the several classes of action therein specified.  The statutes prescribing special and unusual limitations are numerous.   Many of them are enumerated in a note to section 414 by Mr. Throop.   They are frequently cases which would fall within the classes enumerated in the general chapter, except

as taken out by the special law. The legislature, by section 414, preserved the special cases from the operation of the general rule of limitation prescribed in chapter four. Section 414 does not declare in terms that section 405 and other general provisions in title three of chapter four shall not apply to actions governed by section 1822. If it is construed as though it affirmatively declared that the " rules of limitation " in chapter four shall not be applicable when a different limitation is specially prescribed by law, then the question arises, is the provision of section 405 a " rule of limitation " within the language of section 414, or do these words refer to those specific periods prescribed in articles first and second of chapter four for the bringing of actions? This would seem to have been all that could reasonably have been intended. It preserved the special limitations where they differed from the limitations in the general statute. To restrict the general provisions in article three to cases subject to the limitations of the general statute would often be productive of great injustice. Among these general provisions are those which prescribe what shall be deemed the commencement of an action; what shall be the consequence of the absence of a defendant from the state; the effect of the death of the plaintiff; of an injunction preventing the commencement of an action; and section 405 provides for the case of the termination of an action and an enlargement of the time, under the circumstances specified. The present case illustrates the hardship which would often follow if the benignant provisions in the general act were held to be inapplicable to cases of special limitation. The plaintiff was non-suited in the first action and has succeeded in this. He was defeated in his first action presumably because he had mistaken his remedy. He then brought his second action. The statute is a bar unless saved by section 405 We had occasion recently to decide a very similar question in the case of *Hayden* v. *Pierce* (144 N. Y. 512), and the reasoning in the careful opinion in that case is applicable to this case. It was there held that section 401 of the general provisions of chapter four of the Code

was applicable to a cause of action against executors, which was subject to the six months limitation prescribed by section 1822, and that absence of the executor from the state when the cause of action accrued enlarged the limitation of section 1822, so as to exclude such absence in the computation of time.

The principle of this case is decisive against the defense of the Statute of Limitations in the case at bar. It becomes unnecessary, in view of this decision, to review the various decisions theretofore made, bearing more or less upon the subject. We adhere to the decision in *Hayden* v. *Pierce* as a sound and reasonable construction of the somewhat ambiguous provisions of section 414. There is an apparent incongruity in the particular case, that the legislature should give to a plaintiff a year after the termination of the former suit to bring an action against an executor or administrator, when the original action must have been brought within six months after the rejection of the claim. But the legislature was declaring a general rule applicable to all cases, and made no distinction, as it might perhaps have done, if its attention had been drawn to the special case of an action to enforce a claim against the estate of a decedent which had been presented and rejected.

Exceptions were taken by the defendants on the trial to the admission and rejection of evidence and to the charge of the court. We deem it unnecessary to refer to more than one of the exceptions, and that exception raises the question as to the propriety of permitting the jury to find that there was a warranty of the value of the stock. It is well settled that a mere naked representation by a vendor of the value of property sold is to be regarded as an expression of opinion merely, and will not sustain an action for deceit, although the representation was known to the vendor to be untrue and was made with intention to deceive the purchaser. The case of *Ellis* v. *Andrews* (56 N. Y. 83) was a case of this character. The doctrine that such a representation is mere dealers' talk was applied in that case, and Mr. Benjamin, in his work on Sales, regarded it as having carried the doctrine " very far " (1 Benj. on Sales, p. 561). But a vendor may give a warranty as to

value as in respect of any other fact, and if he makes a representation as to value, which is intended as a warranty, and it enters as a constituent element into the transaction, it will then become a part of the contract and may be enforced as a warranty. The learned author referred to, speaking of the subject, says (Sec. 932, p. 811): "And in determining whether it was so intended, a decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment. In the former case there is a warranty; in the latter not." The court, in the charge to the jury, properly instructed them that the naked expression of opinion as. to value of property made by the vendor is not a warranty upon which a recovery could be had, but added, "if you find that what Mr. Poole stated was intended to be an affirmative fact upon which he intended this man to rely, that the stock was worth 100 cents on the dollar, he being one of the original stockholders or owners himself claiming to have knowledge that it was worth 100 cents on the dollar, it is for you to say whether it amounted to something more than the expression of an opinion." Whether a particular affirmation made by a vendor on an oral contract for the sale of property was intended as a warranty is often a question for the jury. (*Shippen* v. *Bowen*, 122 U. S. 575, and cases cited.) Many circumstances in this case might properly be considered as bearing upon the question; the fact that the sale was not of a chattel, open to inspection by the purchaser, but of stock in a supposed corporation in another state; the assertion made by the vendor in connection with the statement of value, that he was one of the original or early stockholders, and that the stock was a dividend-paying stock (which was true only in a very limited sense); the fact that it was only after these statements were made that the plaintiff agreed to take the stock at its par value, saying to Mr. Poole: "If the stock is all right, as you say, we will make the trade." We think the jury might well

have found, upon all the circumstances, that the assertion of Mr. Poole, as to the value and character of the stock, was something more than the expression of a mere naked opinion, and was intended to be and was relied upon as a warranty of the fact. The vendor assumed to know the value of the stock, and stated circumstances calculated to impress the plaintiff with the belief that the value was known to him. The plaintiff was about to take the stock as payment at its face value for his property. It was natural that he should require information as to its value, and both parties must have regarded the affirmation of the vendor on the subject as a material element in the transaction. We think there was no error in submitting this question to the jury.

We find no error in the record requiring a reversal of the judgment, and it should, therefore, be affirmed.

All concur.

Judgment affirmed.