In the Matter of the Estate of Elizabeth W. Griffith, Deceased.

Surrogate's Court, Oneida County, May 27, 1926.

Executors and administrators — claim against estate predicated on loan to decedent — claimant within three months after rejection of claim by executor commenced action in Supreme Court against executor under Surrogate's Court Act, § 211, to recover amount due — action discontinued and claimant properly presented claim on judicial settlement of account — evidence shows estate received $700 in excess of what claimant owed on promissory notes given decedent — discontinuance of action in Supreme Court was not adjudication of claim on merits.

In proceedings for the judicial settlement of decedent's estate, a claim made by decedent's brother, predicated on a loan made to decedent, should be allowed, where it appears that though at the time of decedent's death the claimant owed decedent certain amounts evidenced by three promissory notes aggregating with interest, $5,300, decedent's executor collected said amount of money from claimant over claimant's protest that it was in excess of what he actually owed and that subsequently a canceled check for $700 signed by claimant and payable to decedent's order and bearing her indorsement and the stamp of the bank on which it was drawn to the effect that it had been duly paid was found by claimant and submitted in evidence, since said check, particularly when the evidence discloses a notation in a book in the handwriting of the decedent acknowledging the receipt of the check, must be deemed to have been such a payment on account of the notes as renders the estate indebted to the claimant in the sum of $700.

The fact that claimant within three months from the date of the rejection of his claim by the decedent's executor commenced an action in the Supreme Court against the executor, under section 211 of the Surrogate's Court Act, to recover the amount due on said claim does not defeat his right to recover thereon in the Surrogate's Court, notwithstanding the fact that the action was, by stipulation signed by plaintiff's attorney and the executor, " discontinued and ended without costs," since said action was merely an abortive attempt upon claimant's part to establish his claim in the Supreme Court; there having been no adjudication of the claim upon the merits, claimant is legally entitled to present his proof in the Surrogate's Court.

Proceeding for the judicial settlement of estate.

*William E. Seavey*, executor, in person.

*Adrian S. Malsan*, for the claimant, Peter Williams.

Evans, S. The decedent died May 11, 1924. Mr. Peter Williams, a brother of the decedent, filed a claim against the estate on or about November 20, 1924, for $700 with interest from September 4, 1923.

The claim was for money alleged to have been loaned by Mr. Williams to the decedent.

The executor rejected the claim and served written notice of such rejection on the claimant and consented that the validity

of the claim be tried and determined at the time of the judicial settlement of the estate.

Within three months from the date of rejection an action was commenced in the Supreme Court against the executor by the claimant to recover the amount due on the claim. The usual pleadings were served and trial of the case was about to commence when the action was discontinued by stipulation signed by the plaintiff's attorney and the executor, defendant, who appeared in person. The stipulation provided that the action might be " discontinued and ended without costs."

The claimant was allowed on the judicial settlement to submit proof of the validity of his claim. The executor disputes the validity of the claim and further contends that if the claimant ever had a valid claim he lost his right by bringing an action in the Supreme Court and then discontinuing it; that he elected his remedy and is foreclosed of any right in this court.

Two questions are thus presented, viz., did the claimant ever have a valid claim and if so does the procedure that he adopted prevent relief in the Surrogate's Court?

The decedent was an aged woman and the claimant is a man eighty-six years of age, with financial interests of considerable magnitude.

It appears from the evidence that the decedent at different times loaned to the claimant various amounts of money and that at the time of the decedent's death the claimant owed the decedent certain amounts evidenced by three promissory notes. The financial transactions between this aged brother and sister appear to have been conducted in a rather loose manner. The claimant had but a vague idea of the extent of his indebtedness to the estate and estimated that he owed from $1,500 to $2,500. The principal due on the three notes amounted to $4,400 and with interest the total amount due was $5,300. The notes bore no indorsement of payments and the claimant was unable to furnish proof of any payment.

It was, therefore, the duty of the executor to collect of the claimant the full amount shown to be due, $5,300, which he did on or about September 4, 1924. When the claimant paid the notes he protested to the executor that the amount demanded was in excess of what he actually owed. Subsequently and in the fall of 1924 a canceled check was found by the claimant bearing date of September 4, 1923, signed by the claimant and made payable to the order of the decedent for the sum of $700. The check was drawn on the First National Bank and Trust Company of Utica and bears the indorsement of the decedent and was duly paid by the bank.

A small book in the Welsh language which was owned by the decedent and found among her papers contains a notation in the handwriting of the decedent: "Sept. 4, 1923, received from Peter Williams $700 check." There is no evidence that at the time of such payment the decedent held any note against claimant except the three notes in question.

The claimant at present is in the State of Florida, which fact is immaterial, as the claimant is disqualified as a witness to explain the transaction.

While the claim as stated is for money loaned by the claimant to the decedent, the proof leads me but to one conclusion, that the $700 paid was to apply on the notes, and that however the transaction may be construed the result is the same and shows that this estate has received from the claimant $700 in excess of what he owed.

"Proceedings under the statute to determine claims against the estate of a decedent are informal. There are no pleadings in the ordinary acceptation of the term. It is not required that the claim presented shall be stated with legal precision. It is sufficient if the transaction out of which the claim arises is identified and its general character indicated, without technical formality, and the amount of the claim is stated." (*Titus* v. *Poole*, 145 N. Y. 414.)

On the facts I think that the claimant has established his claim and the question remaining is what bearing, if any, has the action brought in the Supreme Court on his right to recover.

The practice in determining claims against estates has been considerably simplified. The former practice provided for the rejection of claims by the representative of an estate coupled with a consent that the claim be determined by the surrogate on the judicial settlement. If the creditor wished to adopt that form of procedure he was required to file his consent in the surrogate's office and also to serve such consent on the representative of the estate. The right to sue the claim was limited to six months from the date of rejection and failure to do so barred such action, and if no consent was filed as prescribed the creditor was barred of his remedy in the Surrogate's Court and could not be heard on the accounting.

These artificial and highly technical rules often resulted in a denial of justice to a creditor who was ignorant of the law and had no counsel. In many instances the result was the same where a careless attorney was employed and allowed six months to expire without suing the claim or filing the required consent.

The present practice as prescribed by section 211 of the Surro-

gate's Court Act allows a creditor three months from the date of rejection of the claim in which to bring his action if he so desires or to remain passive and have his claim heard on the judicial settlement without the necessity of filing or serving a consent.

The most that can be said about the two methods afforded to a creditor is that for three months after rejection of his claim he may have his rights determined in the Supreme Court. By failure to sue within the given time such right is forfeited. In the final analysis this right when exercised still remains more or less under the control of the Surrogate's Court. The successful creditor in the Supreme Court is subject to the provisions of section 151 of the Decedent Estate Law (added by Laws of 1920, chap. 919) and must apply to the Surrogate's Court for an order permitting execution to issue.

Judgments procured against representatives of estates obtain no priority in payment over other debts of the same class and confer no added dignity to ordinary claims. (Surrogate's Court Act, § 212.)

Costs that ordinarily follow as of course a verdict in an action between parties are subject to section 1499 of the Civil Practice Act where such verdict is against an administrator or executor and are not awarded except in cases where a claim has been presented and its payment unreasonably resisted or neglected, and such fact is certified by the judge before whom the action is tried.

With the limitations pointed out it would seem that the right to sue a claim in the Supreme Court is to preserve to the creditor his right to trial by jury. Since juries have now become part of the Surrogate's Court the right to a jury trial in this court over the claim of a creditor has resulted in opposite or contrary decisions.

In *Matter of Stein* (200 App. Div. 726) the Appellate Division (fourth department) upheld the right to a jury trial of a rejected claim.

In *Matter of Woodward* (105 Misc. 446; affd., 188 App. Div. 888) the right to a jury trial was denied.

The action brought in the Supreme Court by this claimant and then discontinued was an abortive attempt to establish his claim in that court. The expiration of three months from the date of the rejection of the claim prohibited the bringing of a new action in that court.

The claim not having been adjudicated on its merits, I think legally entitled the claimant to present his proof in the Surrogate's Court. (*Matter of Harkness*, 119 Misc. 361.)

I, therefore, hold and decide that the claimant has established a valid claim against this estate amounting to $700, with interest from September 4, 1923.

Decreed accordingly.