### SHAW v. UNITED STATES FIDELITY & GUARANTY CO.
### No. 6238.

Circuit Court of Appeals, Third Circuit.

Dec. 22, 1938.

Alfred Brenner, of Bayonne, N. J., for appellant.

McDermott, Enright & Carpenter, of Jersey City, N. J. (James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for appellee.

Before DAVIS and BIGGS, Circuit Judges, and WATSON, District Judge.

BIGGS, Circuit Judge.

Upon November 20, 1925, the appellee issued an insurance policy to Weller, Geyser and Kronengold, doing business as "Tricho", insuring them for the period from November 20, 1925, to November 20, 1926. Upon November 20, 1926, another policy was issued by the appellee insuring them for the period from November 20, 1926, to November 20, 1927. Both policies were identical in terms and these terms will be dealt with in some detail in this opinion.

In November, 1924, Weller, Geyser and Kronengold made a contract with the appellant to remove superfluous hair from her neck, arms and legs by exposing these members to X-rays emanating from a "Tricho" machine.

At various times and at various intervals, from November 13, 1924, to December 3, 1926, the appellant received treatments from the assured. As a result of all of the treatments which she received, or some of them, the appellant was permanently injured about her neck, arms and legs by excess of X-rays. The condition induced in the appellant is difficult to describe in non-technical language, but it may be stated that her skin became parchment-like and leathery and her legs, arms and neck became marked permanently with red spots. The condition is described by the medical witnesses as "telangiectasis", a condition of dilation of blood or lymph capillary vessels or terminal arteries.

The appellant instituted suit to recover damages for her injuries in the District Court of the United States for the Southern District of New York upon September 17, 1927. She procured a judgment in her favor in the sum of $25,000 with costs of $44.50 upon May 4, 1929. Execution was issued and was returned unsatisfied. No part of the judgment has been paid.

The policies of insurance were issued by the appellee to the assured in New York City. The treatments were there given to the appellant. The policies each contained the provision usually included in such contracts of insurance to the effect that the insolvency or bankruptcy of the assured should not release the insurer from the payment of the sum of the damages procured by judgment against the assured.

Upon November 13, 1930, the appellant brought suit upon her judgment against the insurer, the appellee in the present proceeding, in the Supreme Court of New Jersey. At the conclusion of the appellant's case a nonsuit was granted for insufficiency of evidence. From the judgment of nonsuit an appeal was prosecuted to the Court of Errors and Appeals, which affirmed it. Vander Veer v. U. S. Fidelity & Guaranty Co., 113 N.J.L. 513, 174 A. 731. Within one year after such affirmance, namely upon March 14, 1935, the summons in the suit at bar was issued.

Upon trial the learned District Judge dismissed the jury ex proprio motu. Thereafter each party to the suit moved for a direction of verdict in her or its favor, subject however to exception taken by the appellant to the case being taken from the jury. The trial court granted the appellee's motion and final judgment was awarded to it. The appeal at bar is from this judgment.

Four questions are presented for our consideration. Three of them we conceive to present no new questions of law and therefore we will deal with them first. The fourth question, namely, the limitation of time upon the commencement of the appellant's action does present what we deem to be a new question and therefore its consideration is left to the last.

1. *Was Notice Given to the Appellee in Accordance with the Terms of the Policies of Insurance?*

Condition E of the policy provides that upon the occurrence of an accident "* * * the Assured shall give, as soon as reasonably possible notice thereof with the fullest information obtainable, to the Company at its Home Office or to a duly authorized agent of the Company. If a claim is made on account of such accident, the Assured shall give like notice thereof with fullest particulars. If thereafter a suit is brought against the Assured to enforce such a claim the Assured shall, as soon as reasonably possible, forward to the Company at its Home Office every summons or other process as soon as the same shall be served on him." These provisions as to the notice required to be given by the assured to the appellee are substantially similar to the provisions ordinarily contained in such policies of insurance.

It does not appear to be seriously contended by the appellee upon this appeal that it was prejudiced because of lack of notice given to it in accordance with the terms of the policies. Dr. Weller testified that the summons and complaint in the New York suit were mailed to the appellee and that he and his co-partners were defended by counsel who appeared, according to his testimony, in behalf of the assured for the insurance company, albeit under a reservation of rights by the insurance company, and that the assured, cooperating with the appellee, turned over their records relating to the treatments of the appellant to the appellee who used them at the trial.

This point, we think, merits no further consideration and must be resolved in the appellant's favor. Matthews v. American Central Ins. Co., 154 N.Y. 449, 48 N.E. 751,

39 L.R.A. 433, 61 Am.St.Rep. 627; Lindblom v. Metropolitan Life Ins. Co., 210 App.Div. 177, 205 N.Y.S. 505; Biederman v. Commercial Casualty Ins. Co., 133 A. 772, 4 N.J. Misc. R. 591; Revell v. Columbian Protective Ass'n, 157 A. 553, 9 N.J. Misc. 1311.

2. *Were the Appellant's Injuries "Accidentally Suffered" within the Meaning of the Policy?*

The appellee contends, quite aside from questions arising as to the time of the occurrence of the injuries, that the injuries sustained by the appellant were not accidentally suffered by her by reason of her treatments, within the terms of the policies. The appellee refers to clauses V and VI of the policies which provide coverage only for claims for bodily injuries "accidentally suffered" and that such injuries must be sustained "by reason of accidents". Now there is no doubt that the appellant's injuries were caused by a too continuous application of X-rays. The injuries incurred by Mrs. Shaw, argues the appellee, were not "accidentally suffered" by her within the terms of the policies, but were the accidental result of treatments which she bought and paid for.

The appellee's argument in this connection may be stated as follows: Since the appellant intended to submit herself to the radiation applied by the assured by their Tricho machine, she did so, and the radiation from the Tricho machine being applied with the intention of applying it, her injuries were not accidental and therefore were not within the terms of the policy. The appellee contends that the principle enunciated by the Supreme Court in the case of Landress v. Phoenix Mutual Life Insurance Company, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, relieves it of liability within the terms of the clauses of the policies referred to.

In the cited case the assured suffered a sunstroke while playing golf. He had two policies of insurance upon his life. The beneficiary of the policies sought recovery of amounts stipulated in one policy to be paid if death should result "directly and independently of all other causes from bodily injuries effected through external, violent and accidental means, and not directly or indirectly, wholly or partly from disease or physical or mental infirmity" [page 462], and in the other policy, if death should result "from bodily injuries effected directly and independently of all other

causes through external, violent and accidental means." Mr. Justice Stone, delivering the opinion of the Supreme Court, distinguished between "accidental external means" and "accidental result". He stated:

"The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental. The external means is stated to be the rays of the sun, to which the insured voluntarily exposed himself. Petitioner's pleadings do not suggest that there was anything in the sun's rays, the weather, or other circumstances external to the insured's own body and operating to produce the unanticipated injury, which was unknown or unforeseen by the insured.

"We do not intimate that injuries resulting from as impalpable a cause as the inadvertent introduction into the body of noxious germs may not be deemed to be effected by external accidental means. See Western Commercial Travelers' Ass'n v. Smith (C.C.A.) 85 F. 401, 40 L.R.A. 653; Jensma v. Sun Life Assur. Co. (C.A.) 64 F.2d 457. Nor do we say that in other circumstances an unforeseen and hence accidental result may not give rise to the inference that the external means was also accidental. Compare Jensma v. Sun Life Assur. Co., supra; Gustafson v. New York Life Ins. Co. (D.C.) 55 F.2d 235. But, in the light of such knowledge as we have, no such inference can arise from the bare allegation of death by sunstroke, compare Pope v. Prudential Ins. Co. (C.C.A.) 29 F.2d 185; Ryan v. Continental Casualty Co. (C.C.A.) 47 F.2d 472, with no indication that some unforeseen or unintended condition or combination of circumstances, external to the state of the victim's body, contributed to the accidental result. The petitioner has thus failed to plead facts establishing the liability defined by the policy."

We think that the cited case does not rule the case at bar, since the conditions of recovery stipulated in the policies in the cited case differ substantially from those in the policies in the case at bar. The policies in the instant case do not contain provisions stipulating that recovery may be had for bodily injuries effected directly and independently of all other causes through external, violent and accidental means. The pertinent provisions of the policies in the case at bar are that the in-

juries must be "accidentally suffered, * * by reason of, or resulting from work, treatment, or operation and/or the use of any preparation and/or appliance used in connection with the business of the Assured or demonstrated by an employee of the Assured at the location named in Item No. 4 of the Schedule of Statements". Upon the Schedule of Statements the location of the place where the operations of the assured were to be conducted is stated to be No. 270 Madison Avenue, New York City, where the appellant received her treatments at the hands of the assured or their employees, and the "Description of Operations" contained in the Schedule of Statements refers to "Hypertrichosis operations by means of a Tricho Machine". Hypertrichosis is defined by Webster's New International Dictionary simply as "excessive growth of hair".

In other words, the appellee specifically insured the assured for damages on account of bodily injuries sustained by any person not an employee of the assured received while that person was subject to operations by a Tricho machine operated by the assured or their employees, for the removal of excess hair. It follows therefore that the injuries to the appellant, if incurred within the period covered by the policies, were precisely within the coverage of the policies. In short, the policies were designed and intended to protect the assured physicians from liability for suits arising from the use of a Tricho machine for remedying a condition of hypertrichosis.

Other grounds of distinction between the Landress Case and that at bar occur to us. The appellee contends that the appellant received only the treatments which she had bargained for and that her complaint goes solely to the after-effects of the treatments. It states its position in this connection as follows: "Rather than her injuries being accidentally suffered they were, in fact, a perfectly natural result of excessive X-ray treatment which she voluntarily submitted to." The appellee claims therefore that within the meaning of the Landress Case, though the result to the appellant was accidental the cause of that result was not. We think however that in the case at bar it can be demonstrated not only that the result to the appellant was an accident, but the cause of that result was accidental as well.

An example will aid. A physician gives a patient an overdose of medicine which, beneficent in proper doses, is nearly lethal as given. From it the patient suffers most serious consequences. An insurance policy insures the patient against bodily injuries accidentally suffered. The patient intended to receive the dose within his body and his physician intended to place it there, but the cause that placed the excessive quantity of the medicine into the dose is seen to be accidental. The result was accidental also. This example, we think, distinguishes itself from the Landress Case because it is obvious that the physician did not intend to expose the patient to the effects of an overdose of medicine. In the Landress Case, upon the other hand, the golfer intended to submit himself to the radiation of the sun, no matter what that force of radiation was. He received all radiation that the sun could give and he intended to receive it all. In the case at bar it does not appear that the assured intended to treat the appellant with an excess of X-rays nor does it appear that she intended to receive such treatments to an extent which would injure her. On the contrary, there is evidence to support the conclusion that the assured intended to remove the appellant's superfluous hair without injury to her and that that was her intention in receiving the treatments. The intention of the parties to the contract serves to determine whether or not the appellant's injuries were "accidentally suffered" within the provisions of the policies. The question of the sufficiency of the evidence to go to the jury was determinable under the law of the forum and there was sufficient evidence to go to the jury upon the point stated. Dickinson v. Erie R. Co., 85 N.J.L. 586, 90 A. 305; Lancaster v. Highlands Finance Corp., 117 N.J.L. 476, 189 A. 371; Israel v. Travelers' Ins. Co., 116 N.J.L. 154, 182 A. 840. The substantive rights of the parties are governed by the law of New York, since the cause of action arose there. The decisions of the courts of that state, however, indicate plainly that the evidence presented was sufficient to show the existence of a cause of action in the appellant. Gallagher v. Fidelity & C. Co., 163 App.Div. 556, 148 N.Y.S. 1016, affirmed 221 N.Y. 664, 117 N.E. 1067; Lewis v. Ocean Accident & G. Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129; Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914.

3. *Were the Injuries Sustained by the Appellant within the Period Covered by the Policies?*

The first policy issued by the appellant to the assured covered the period from November 20, 1925 to November 20, 1926; the second policy covered the period from November 20, 1926 to November 20, 1927. The policies covered, by the provisions of Clause VI, " * * * only such injuries so sustained by reason of accidents occurring within the policy period * * *". Now the chart kept by the assured of the appellant's treatments shows that she received fifty-five applications of X-ray, commencing upon November 13, 1924, and continuing from time to time until December 3, 1926. The appellant received only fourteen treatments after the policies were in force and forty-one treatments prior to the issuance of the policies. The appellee takes the position that the appellant's injuries were caused by the treatments received by her prior to the inception of any insurance coverage and not by the fourteen treatments received thereafter. It is apparent that the appellee is liable upon its policies of insurance if it be shown that the injuries received by the appellant were sustained by her as a result of the fourteen treatments last given to her. We think also that the appellee must be deemed to be liable upon its policies of insurance if the fourteen treatments last given caused the appellant's injuries because their effect was added to that of the forty-one treatments first given, though the latter of themselves caused no injury, simply creating a condition of susceptibility in the appellant. Such liability upon the part of the insurer is within the terms of paragraph V of the policies.

An examination of the appellant's testimony indicates that she noticed ill effects from her treatments for the first time in August, 1926. She stated that at that time there was a small area, circular in shape and in the nature of red spots near one of her knees and that she reported this to Dr. Geyser. She testified that he stated to her that she should continue with her treatments and that there was no cause for alarm upon her part. The appellant also testified that other spots developed upon her body about February or March, 1927. This was a date three to four months after treatment by the assured had ceased. Dr. May, a qualified expert, specializing in radiology, testified as follows in response to the questions indicated:

"Q. * * * can you with any degree of reasonable certainty tell us the length of time, prior to the time that this woman came to you in August of 1927, determine when there was a destruction of the blood vessels or capillaries which brought about the condition which you found? * * * A. Well, you can say with quite a degree of certainty that it was the last number of treatments which have been given, which of course make the conditions appear more.

"The Court: How many treatments have to bring it about or can't you tell?

"The Witness: The number cannot be stated, your Honor.

"Q. Well, the period of time then, Doctor?

"A. You could say that within a certain period, take three or four or five or six months after a treatment, if this telangiectasis don't appear, I think the patient may never show any. That means that the treatments given did not produce this particular condition. * * *

"The Court: * * * Well, now Doctor, would forty treatments produce this condition or would the fourteen treatments produce this condition or would fifty-four produce it or can't you answer either of those questions?

"The Witness: I am sure that as your Honor said before, the accumulation of everything, of all the treatments, did it.

"The Court: But you don't know at what point—

"The Witness: I think the last treatment certainly contributed a whole lot to bringing about that condition. You may lead up to an erythema, you may lead up to two or three erythemas within a certain time and not get any telangiectasis at all or any degeneration of the skin of that type which (the appellant) shows, but then you may give just one or two treatments on it and that's all the skin could stand and the skin will break down. Now, it is impossible absolutely to say that the last few treatments did it, but I am quite sure that the last few treatments certainly contributed to a very great extent to that."

Thereafter, Dr. May was asked the following questions:

"Doctor, Mrs. Shaw testified here this morning that the first that she observed of the appearance of this rash or spots was on the leg and it appeared about August, 1926. Now, assuming that she had no ap-

pearance of any such marks prior to that time, within how many days or months or years, if you please, would it take for that condition to develop that would bring about the appearance of these spots, if you can tell us?"

"A. I have said before in my statement that it may be two, three, four or six months."

"Q. * * * Now assuming again that the spots on the arms, neck and other parts of the body, outside of this spot on the leg, did not appear for the first time until February or March of 1927, would your answer to that, to those particular spots, be the same as it was to the spot on the leg, that it was the development of two or three or four or five or six months? * * * A. Yes."

Upon cross-examination it was brought out that an erythema dose, viz: a dose of X-ray inducing abnormal redness of the skin due to capillary congestion, should not be repeated frequently upon the same area because the repetition of such doses causes telangiectasis. Dr. May also testified upon cross-examination, however, that in his opinion each dose shown upon the chart was not a full erythema dose and that the erythema dose could be repeated several times without endangering the skin.

The question presented for our determination is whether or not the injuries sustained by appellant were sustained within the policy period. It is at once apparent from an examination of the record that the injuries to the appellant became visible to the eye within the period covered by the policies. It is also apparent from the testimony of Dr. May that it was the cumulative effect of all the treatments that caused the appellant's injuries. But if the testimony of Dr. May be accepted, it must be found that though the treatments received by the appellant prior to the period covered by the policies may have had their effect in preparing her skin and tissues for the injuries which later came upon them, no injuries were actually sustained by the appellant except by reason of the effect of the treatments given within six months of the first appearance of the red spots upon her knee and within six months of the time the later spots appeared upon the other portions of her body. Such treatments were received by the appellant within the period covered by the policies.

The expert testimony indicates that the creation of the condition of telangiectasis, under the circumstances of the case at bar, was the result of the accumulation of dosage, that repeated erythema doses might have been given without causing the condition, but when the force of the X-rays upon the appellant's skin had reached a certain proportion or weight the resulting injury took place as an inevitable consequence.

The expert testimony presented by the appellant gave a basis for more than a presumption. It was based upon facts within the technical knowledge of the expert witness, which in turn was based upon the appellant's own testimony, Dr. Weller's testimony and the written record of the appellant's treatments. Dr. May's testimony was entitled to such weight as the jury cared to give to it. The jury might have refused to believe it, or have decided that the rebutting testimony offered by the appellee was entitled to greater weight. But the question of the weight and sufficiency of the testimony was properly a question for the jury. Fulton v. Grieb Rubber Co., 72 N.J.L. 35, 60 A. 37; Dickinson v. Erie R. Co., supra; Union Garage Co. v. Wilner, 101 N.J.L. 362, 128 A. 161.

4. *Was the Action at Bar Timely Brought?*

In disposing of the question under this heading we state again that the appellant procured her judgment against the assured in the District Court of the United States for the Southern District of New York upon May 4, 1929. She brought her suit against the appellee in the Supreme Court of New Jersey upon November 13, 1930, that is to say within the two years provided by Condition G of the policies which states that no action shall lie against the appellee unless brought within two years after the amount of the loss is made certain by judgment against the assured or otherwise ascertained. Upon November 25, 1932, a judgment of nonsuit was entered by the Supreme Court of New Jersey against the appellant. The order of the Supreme Court of New Jersey granting the nonsuit is a part of the record in the case at bar and it is agreed by the parties that an appeal was taken therefrom by the appellant to the Court of Errors and Appeals. This nonsuit was involuntary. It was not of such a character as would adjudicate the appellant's cause of action. Snowhill v. Hillyer, 9 N.J.L. 38; Beckett v. Stone, 60 N.J.L. 23, 36 A. 880. On October 11, 1934, the Court of Errors and

Appeals affirmed the judgment of the Supreme Court but without opinion. Upon March 14, 1935, the suit at bar was filed.

 From the foregoing it appears that the suit filed by the appellant in the Supreme Court of New Jersey was filed within the limitation of time imposed by Condition G of the policies; it is equally apparent that if the two year period of limitation be applicable, the suit at bar was filed out of time. The general statute of limitations of New Jersey[1] relating to actions of contract without specialty provides a period of six years in which suit must be brought. In the absence of limitation imposed by contract between the parties, the law of the forum supplies the period of limitations. And it is also true that generally in the absence of any applicable federal statute a federal court will apply the statute of limitations of that state in which it sits. Bluefields S. S. Co. v. United Fruit Co., 3 Cir., 243 F. 1; Stanley v. United States, D.C., 23 F.2d 870; United States v. Sligh, 9 Cir., 24 F.2d 636, judgment vacated because Act of May 29, 1928, 45 Stat. 964, 38 U.S.C.A. § 445, had become effective and applied, Sligh v. United States, 277 U.S. 582, 48 S.Ct. 600, 72 L.Ed. 998; Weems v. Carter, 4 Cir., 30 F.2d 202; United States v. Preece, 10 Cir., 85 F.2d 952.

But Condition I of the policies provides, as the appellant points out, that if the limit of time set by the policies for the commencement of any legal proceedings against the insurer is at variance with any specific statutory provision in relation thereto in force in the state in which the assured is carrying on business "such specific statutory provision shall supersede" any condition in the policies inconsistent therewith. It therefore is necessary to ascertain if the limitation of time for suit imposed by Condition G is inconsistent with specific statutory limitations imposed upon such actions by the statute law of New York. We state that Section 48 of the Civil Practice Act, General Statute of Limitations of New York, provides that actions under contracts, such as those at bar, must be commenced within six years after the accrual of the cause of action.

What is the meaning of the phrase of the policies, "specific statutory provision" used in Condition I in connection with a period for limitation of actions? It is apparent that the policies in the case at bar were made up for use by the appellee throughout the United States wherever the appellee conducted its business. In several states specific statutory provisions of insurance law prevent the parties to an insurance contract from prescribing a shorter period for bringing action upon a contract of insurance than that prescribed by the law of the state. See Hilker v. Western Automobile Insurance Co., 204 Wis. 1, 231 N.W. 257, affirmed 204 Wis. 12, 235 N.W. 413. In the cited case a one year period of limitation for the commencement of actions against an insurance company for a loss was deemed invalid in view of a statute of Wisconsin (St. 1929 of Wisconsin, Sec. 201. 19a) specifically providing that, "No policy or contract of insurance shall be made, issued or delivered in this state containing any provision * * * limiting the time for beginning an action on the policy or contract to a time less than that prescribed by the statutes of limitations of this state or specifically authorized by law." The general law of Wisconsin provided for a six year statute of limitations upon actions of contract. See, also, Brucker v. Georgia Casualty Co., 326 Mo. 856, 32 S.W.2d 1088.

██ ██ We think that it was the intention of the appellee to provide by the provisions of Condition I that the two year period of limitations prescribed by Condition G should be superseded by and fall before any specific statutory provision of the law of New York relating to the time for commencement of actions upon insurance policies. Upon the point now under consideration, even if Section 48 of the New York Civil Practice Act, which constitutes the general statute of limitations of New York, be construed as a specific statutory provision, a conclusion we believe to be untenable (see Bass v. Standard Accident Insurance Co., 4 Cir., 70 F.2d 86, 88, and Matelsky v. Globe Indemnity Co., 162 Misc. 326, 294 N.Y.S. 588), none the less it is obvious that provisions of Section 48 are not inconsistent with the period of limitation prescribed by Condition G since the former may stand literally with the latter. Moreover, Section 10 of the New York Civil Practice Act, which provides that "The provisions of this

---

[1] Compiled Statutes of New Jersey 1910, p. 3162, Rev.1877, p. 594, R.S.1937, 2:24-1.

article apply and constitute the only rules of limitation applicable to a civil action * * *", except "* * * where a definite limitation is specially prescribed by law or a shorter limitation is prescribed by the written contract of the parties", wipes out even any apparent inconsistency. If therefore our consideration of provisions for the limitation of actions, whether statutory or contractual, ceased at this point, it would be necessary to hold that the provisions of limitation of Condition G were carried over by the contracts of the assured and the appellee into the law of the forum, that is to say, into the law of New Jersey, with the result that the suit at bar would not have been timely brought.

Other and more difficult questions of statutory construction present themselves, however. The New York Civil Practice Act, Section 23, provides, that if an action is commenced "* * * within the time limited therefor * * *" and "* * * is terminated in any other manner than by voluntary discontinuance * * * the plaintiff * * * may commence a new action for the same cause * * * within one year after such a reversal or termination. * * *" The appellant contends that this provision of the statute law of New York must be read into the provisions of Condition G by virtue of the provisions of Condition I. The appellee denies this but contends that if it be so, then the provisions of Section 482 of the New York Civil Practice Act, which provide that "A dismissal of a complaint * * at the close of the plaintiff's or defendant's evidence, as the case may be * * * is a final determination of the merits of the cause of action and bars a new action between the same parties * * * unless the court shall dismiss without prejudice * *. *", must also be read into the provisions of Condition I and bar the appellant's suit. The appellee further contends that the two acts last referred to relate solely to details of practice, simply to the procedure in the courts of New York and therefore can have no force or effect outside of the State of New York.

At the least it must be said that the assured and the appellee entered into the contracts of insurance in the light of the statute law of New York, and, therefore, setting aside the application of the provisions of Section 482 of the New York Practice Act for the time being, we conclude that if the appellant's suit, first com-

menced against the appellee in the Supreme Court of New Jersey, had been filed by her in the Supreme Court of New York and the suit at bar had been commenced in New York instead of in the court below, the provisions of Section 23 of the New York Practice Act would apply and the appellant's suit would have been timely brought since it was commenced within one year of the time of the termination of the earlier suit against the appellee. Titus v. Poole, 145 N.Y. 414, 422, 40 N.E. 228; Comey v. United Surety Co., 217 N.Y. 268, 111 N.E 832, 833, Ann.Cas. 1917E, 424; Littrell v. Allemania Fire Ins. Co., 224 App.Div. 523, 231 N.Y.S. 520, 521, reversed on other grounds in 250 N.Y. 628, 166 N.E. 350; Bellinger v. German Insurance Co. of Freeport, 51 Misc. 463, 100 N.Y.S. 424, 426; Id., 113 App.Div. 917, 100 N.Y.S. 424, affirmed 189 N.Y. 533, 82 N.E. 1124. But the appellant insists that Condition G of the policies, read in the light of Condition I, must be deemed to include by supersession the provisions of Section 23 of the New York Practice Act. The appellant contends therefore that although the assured and the appellee by the contracts of insurance contracted for a two year period of limitations for the commencement of actions, they also agreed that, if an action timely commenced within the two year period was disposed of otherwise than by voluntary discontinuance, there should be an additional period of a year in which another suit might be brought, whether in the courts of New York or elsewhere.

We think that it is apparent in view of the printed forms on which the contracts of insurance are written and in view of the well established practice of insurance companies generally in insisting upon the preparation of their own policies of insurance, a fact of which we may take judicial notice, that the terms of the insurance policies must be construed more favorably to the assured and to the appellant than to the appellee. Phoenix Mut. Life Ins. Co. v. Raddin, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644; Dilleber v. Home Life Ins. Co., 69 N.Y. 256, 25 Am.Rep. 182; Burleigh v. Gebhard Fire Ins. Co., 90 N.Y. 220. So construing them, we think that the provisions of Section 23 of the New York Civil Practice Act are specific provisions relating to the time for the commencement of actions, and as such are precisely within the purview of Condition

I of the policies if they are inconsistent with the limitation of time of actions imposed by Condition G.

We recognize that in all probability the appellee in using the phrase "specific statutory provision" meant to refer to and designate only those statutes prohibiting the creation by contract of the parties of a period of limitation for the commencement of actions against the appellee shorter than that prescribed by statute, but the appellee has not expressed such a precise limitation and for us to give that effect to the phrase used would in our opinion constitute a judicial amendment to the policies of insurance. It is true that the provisions of Section 23 of the New York Civil Practice Act apply to all cases where an action is commenced within the time limited therefor and are terminated in the manner indicated by the statute. But Section 23 is not part of the general statute of limitations of New York; nor is it a statute which relates generally to the bringing of actions; it applies only to a certain category of cases, i. e., those designated by the statute under the circumstances therein provided. It is a statute relating to the bringing of actions under specific and peculiar circumstances and is therefore a specific statutory provision.

But does inconsistency exist between the provisions of Section 23 of the New York Civil Practice Act and the provisions of Condition G? In our opinion the provisions of Section 23 are inconsistent and cannot stand with the provisions for limitations of actions prescribed by Condition G and therefore the latter must fall and be superseded by the former.

We are confirmed in this opinion by the decision of the Supreme Court of New York at Special Term in Bellinger v. German Insurance Co. of Freeport, 51 Misc. 463, 100 N.Y.S. 424, affirmed per curiam by the Appellate Division, Second Department, reported 100 N.Y.S. 424. The Supreme Court construing Section 405 of the Code of Civil Procedure, which became by codification Section 23 of the New York Civil Practice Act, stated at page 464, 100 N.Y.S. at page 425:

"These actions are brought for the 'same cause' as the previous actions by the plaintiff against the same defendants, within the meaning of the provisions of the statute. Code Civ. Proc. § 405. The transaction which is at the foundation of both actions is the same, namely, a contract of insurance between the parties and damage to the plaintiff, for which the defendants are liable within the terms of the contract. Titus v. Poole, 145 N.Y. 414, 423, 40 N.E. 228. The present actions are properly brought under the provisions of the section above referred to. * * * The manifest purpose of the section in question was to permit a party who, through technical error or a mistake in the form of the remedy employed, had been unable to present the real merits of the controversy in the first actions to pursue his real right under a more appropriate form of action. Titus v. Poole, supra.

* * * * * *

"The policies in suit contain a clause to the effect that 'no suit or action on this policy for the recovery of any claim shall be maintainable in any court of law or equity unless commenced within twelve months next after the fire.' Although this clause appeared in the contracts of insurance, the limitation was one 'specially prescribed by law and not' by the written contract of the parties. The command of the statute fixed the period of limitation. The agreement of the parties could not add to or detract from it. Hamilton v. Royal Insurance Company, supra [156 N.Y. 327, 50 N.E. 863, 42 L.R.A. 485]. Even though by special provisions of law a different period of limitation for actions upon these policies is prescribed from that contained in chapter 4, tit. 3, of the Code of Civil Procedure, the provisions of section 405 apply as well to actions affected by such special limitations as to others. The situation is the same as though the clause in the policy read: 'No suit or action on this policy for the recovery of any claim shall be maintained in any court of law or equity unless commenced within 12 months after the fire, except in the cases provided for in section 405 of the Code of Civil Procedure.' "

It is true that in the case cited the court lays emphasis upon the fact that though the period of limitation prescribed by the contract of the parties is twelve months the limitation prescribed by the specific provision of the statute for suits against an insurance company upon a fire insurance policy is likewise twelve months, and that the command of the statute governs, the agreement of the parties not being able to add or substract therefrom. In our opinion, however, this distinction between the cited case and that at bar is immaterial for

there is no specific statutory provision of New York prohibiting a limitation of time by contract of the parties in respect to suits upon such policies as those at bar. Upon the contrary, as we have stated, Section 10 of the New York Civil Practice Act provides that parties by contract may limit expressly the time for commencement of actions as did the assured and the appellee in the case at bar. Nor does it appear from the reported facts of the Bellinger Case that the contract of fire insurance therein embodied any provisions similar to those imposed upon the appellee by Condition I of the policies in suit.

The point raised in 'the Bellinger Case was before the First Department of the Appellate Division of the Supreme Court of New York in McGovern v. City of New York, 250 App.Div. 102, 293 N.Y.S. 833, 835, 836, and the doctrine enunciated by the Bellinger Case was precisely followed. See, also, Sharrow v. Inland Lines, Limited, 214 N.Y. 101, 108-111, 108 N.E. 217, L.R.A. 1915E, 1192, Ann.Cas. 1916D, 1236.

The decisions referred to make plain that though the parties to a contract of insurance may limit the time in which action upon the policy must be brought against the insurance carrier, none the less .they cannot by contractual provisions such as those at bar limit the application of the provisions of Section 23 since the rights of the assured, the appellant and the appellee are determinable under the law of New York. It follows therefore that the two year period of limitation provided by Condition G of the contracts between the appellee and the assured is manifestly inconsistent with the additional period of a year from the time of termination of the preceding action given by Section 23 of the New York Civil Practice Act for the commencement of a new suit as interpreted by the courts of New York.

We should state in respect to the particular point now under consideration that if the statute of limitations of New Jersey prescribed a lesser period for the commencement of actions like the appellant's than the period intervening between the procuring of the appellant's judgment in New York against the assured and the commencement of the suit sub judice, other questions would be presented for our consideration. Since such is not the case we deem it unnecessary to pursue the subject further.

Upon the other hand in our opinion it may not be said that Section 482 of the New York Civil Practice Act heretofore referred to intervenes to deprive the appellant of the right to maintain her cause of action. This section arises under Article 35 of the Civil Practice Act which relates to Judgment. All other sections of the New York Civil Practice Act referred to in this opinion arise under Article 2 thereof and relate to Limitations of Time. To give the provisions of Section 482 effect we would have to find that the assured and the appellee intended by the provisions of Condition I to embody them in the contract because the provisions of Section 482 are to be deemed to be inconsistent with the provisions of Condition G. Since there is obviously no inconsistency between the provisions of Condition G and Section 482, there are no provisions of the contracts of insurance which Section 482 may supersede.

The foregoing determination of the applicability of the designated provisions of the New York Civil Practice Act has been made in the case at bar because counsel for the respective parties have assumed that the two year limitation of· Condition G was applicable to the case at bar and have based their arguments upon such an assumption. We have in effect determined that the provisions of Condition G were applicable to the case at bar, but we think we should state that we entertain grave doubt as to whether the provisions of the condition named have any application at all to the case sub judice.

Provisions similar to those of Condition G are ordinarily contained in policies of insurance similar to fire insurance policies and are made a part of the contracts of insurance in order that there may be a limitation of time in which the *assured* may bring suit upon the policy against the *insurer*. There seems little point in providing that the law of the place where the assured carried on business should be applied to a suit by a third party against the insurer. An injured third party might well sue an insurer elsewhere than in the state where the assured carried on his business.

Condition G purports to deal with a "loss" under the policies. In the case at bar there has been no loss to the assured in as much as execution upon the appellant's judgment was returned unsatisfied. An examination of Condition H of the pol-

icies discloses that it provides that the insolvency or bankruptcy of the assured "shall not release" the appellee from payment of damages "for injury sustained or loss suffered" by a third person who has brought suit against the assured, but Condition H further provides that if execution against the assured is returned unsatisfied the injured person may maintain an action against the appellee for damages. The suit at bar is such an action. It follows therefore that upon a strict construction of Condition H, the provisions of Condition G would be inapplicable since there has been no "loss" suffered upon the policies, and therefore the general statute of limitations of New Jersey would prescribe the period of limitation for action, viz., six years. But whether the provisions of Condition G be deemed to be inapplicable to the suit at bar for the reasons just stated, or whether they be deemed to be applicable as modified by Condition I of the policies and Section 23 of the New York Civil Practice Act, the result is the same. The suit at bar was timely brought.

The judgment of the court below is reversed and the cause is remanded with directions to grant a new trial.